UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ISAAC RICHEY,

                                        Plaintiff,                    Case No. 1:23-cv-344 (AMN/DJS)

              -against-
                                                                      **COMPLAINT FOR INJUNCTIVE**
                                                                      **AND  DECLARATORY RELIEF**
ANN MARIE T. SULLIVAN, MD, in her Individual
and Official Capacity, NEW YORK STATE OFFICE
OF MENTAL HEALTH, NEW YORK STATE OFFICE
OF NICS APPEALS AND SAFE ACT, DOES 1-10 in
their individual capacities,

                                        Defendants.
----------------------------------------------------------------x

       Plaintiff, ISAAC RICHEY, by his attorneys The Bellantoni Law Firm, PLLC, for his

Complaint for, *inter alia,* Injunctive and Declaratory Relief, respectfully states:

## NATURE OF THE ACTION

       1.      This is an action for declaratory, injunctive and other relief, to include presumed

monetary damages in at least a nominal amount, costs, disbursements, and reasonable statutory

attorney's fees pursuant to 42 U.S.C. § 1988, for continuing and imminent irreparable harm to

Plaintiff and all similarly situated individuals in New York State arising from violations to their

constitutional rights as protected by the Second and Fourteenth Amendments to the United States

Constitution pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

       2.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C.

1

§ 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

3.       This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.       Plaintiff ISAAC RICHEY ("Plaintiff") is a citizen of the United States and a resident of the State of Texas.

5.       Defendant ANN MARIE T. SULLIVAN, MD ("Commissioner Sullivan") sued herein in her individual capacity and her official capacity, is the Commissioner of the New York State Office of Mental Health (OMH).

6.       Defendant NEW YORK STATE OFFICE OF MENTAL HEALTH ("OMH") is a governmental subdivision of the State of New York.

7.       Defendant NEW YORK STATE OFFICE OF NICS APPEALS AND SAFE ACT ("SAFE Act Office") is a subdivision, department, and/or agency within the New York State Office of Mental Health.

8.       At all times relevant to this proceeding/action, Commissioner Sullivan was responsible for and directly created, oversaw, and implemented policies, procedures, and training for OMH and the Office of NICS Appeals and SAFE Act in accordance with the New York State Mental Hygiene Law ("MHL") and NICS reporting requirements and statutory parameters.

9.       Defendants DOES 1-10 are individuals who personally and directly implemented the policies and procedures described herein resulting in Plaintiff's personal identifying

information being (i) improperly maintained in the state mental health database for firearms reporting purposes and/or (ii) improperly communicated to other federal and state agencies.

## STATUTORY FRAMEWORK

10.     The Federal Brady Handgun Violence Prevention Act of 1993 ("Brady Act" prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person who has been involuntarily "committed to a mental institution" (18 U.S.C. section 922 (d)(4)) and further prohibits any person who has been involuntarily "committed to a mental institution" from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce, any firearm or ammunition; or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. See, 18 U.S.C. section 922 (g)(4); 14 NYCRR 543.1(a).

11.     Under the Federal NICS Improvement Amendments Act of 2007, Public Law 110-180, section 105 ("NARIP"), the Brady Act was amended to establish the National Instant Criminal Background Check System (NICS). 14 NYCRR 543.1(b).

12.     The NARIP was developed to improve the completeness, automation, and transmission of records to state and federal systems used by the NICS. These include records of criminal history, felony convictions, warrants, protective orders, convictions for misdemeanors involving domestic violence and stalking, drug arrests and convictions, mental health adjudications, and other information that may disqualify an individual from possessing or receiving a firearm under federal law.[1]

13.     The NICS Index contains records provided by local, state, and federal agencies about persons prohibited from receiving firearms under federal law.

---

[1] https://bjs.ojp.gov/programs/nics-improvement-amendments-act#7k6m7f

14.    NICS contains records concerning certain events, such as criminal convictions and mental health adjudications that may disqualify a person from purchasing a firearm.

15.    All records in the NICS Index are considered "federally disqualifying records" and will prohibit the transfer of a firearm. 14 NYCRR 543.1(b).

16.    The 2007 amendments also require participating states, in exchange for receiving federal funds for such reporting, to establish a "certificate of relief from disabilities" process to permit a person who has been or may be disqualified from possessing a firearm pursuant to 18 U.S.C. section 922 (d)(4) and (g)(4) to petition for relief from that disability. 14 NYCRR 543.1(b).

*The Gun Control Act – 18 USC 922(g) – Mental Health Disqualifying Events / Conditions*

17.    The Gun Control Act (GCA), codified at 18 U.S.C. § 922(g), makes it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition, to include any person, including individuals who have been adjudicated as a mental defective or *have been committed to any mental institution*.[2]

18.    Under federal law, "Committed to a mental institution" means "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. 27 C.F.R. § 478.11.

19.    Under 27 C.F.R. § 478.11, the term *does not include* a person in a mental institution *for observation or a voluntary admission* to a mental institution."

---

[2] https://www.atf.gov/firearms/identify-prohibited-persons

*NYS Office of Mental Health Transmission of Mental Health Records to NICS*

20.     New York Mental Hygiene Law § 7.09[3] authorizes the Office of Mental Health (OMH) to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 U.S.C. 921(a)(3).[4]

21.     The records which the Office of Mental Health (OMH) is authorized by law to collect, retain, modify, or transmit **are expressly limited to** persons who have been **involuntarily committed** pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act.[5]

22.     Under MHL § 7.09 (j)(1) the OMH Commissioner, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records to (1) DCJS or to the FBI Criminal Justice Information Services Division (CJIS) for the purposes of responding to queries to the NICS system regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or (2) DCJS, which may re-disclose such data and records only for determining whether a license issued pursuant to Penal Law § 400.00(11) should be denied, suspended or revoked or for determining whether a person is no longer permitted under federal or state law to possess a firearm. **Such records**, which may not be used for any other

---

[3] NY MHL 7.09(j)(1).
[4] 14 NYCRR § 543.1(c).
[5]  14 NYCRR § 543.1(c) (emphasis added).

purpose, **shall include only** names and other non-clinical identifying information **of persons who have been involuntarily committed to a hospital** pursuant to MHL Article 9.[6, 7]

23.     The records transmitted to NICS and CJIS[8] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. 14 NYCRR 543.1(b).

*"Committed to a Mental Institution"*

24.     Under federal law, a person who  has been "committed to a mental institution" is prohibited from receiving, possessing, transferring, and purchasing firearms. 27 C.F.R. § 478.11

25.     Under 27 C.F.R. § 478.11, "Committed to a mental institution" means, "A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution**."  (emphasis added).

26.     Upon being contacted by a Federal firearm licensee (FFL) prior to transferring a firearm, NICS will provide information on whether a person is prohibited from receiving or possessing a firearm under State or Federal law. 14 NYCRR 543.1(b).

27.     Prior to the transfer of a firearm through an FFL, an individual is required to complete ATF Form 4473, "Firearms Transaction Record" (Form 4473). [See, Ex. 1].

---

[6] "[O]r section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter." NY MHL § 7.00(j)(1).

[7] Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter, or section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter.

[8] References to NICS and CJIS are collectively referred to hereafter as "NICS".

28.    Question 21(f) of Form 4473 is, "Have you ever been adjudicated as a mental defective OR have you ever been <u>committed</u> to a mental institution?" (emphasis added).[9]

29.    The Form 4473 "NOTICES, INSTRUCTIONS, AND DEFINITIONS…Question 21(f)" provides,

> **"Committed to a Mental Institution:** A formal commitment of a person to a mental question by a court, board, commission, or other lawful authority. The term Permanent resident aliens and aliens legally admitted to the United States pursuant includes a commitment to a mental institution involuntarily. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.** (emphasis added). [Ex. 1].

30.    An individual who has been admitted to a mental institution voluntarily has neither been "Committed to a Mental Institution" nor "involuntarily committed."

31.    An individual who has been admitted to a mental institution for "emergency observation and evaluation", whether voluntarily or not, has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL § 9.27, § 9.37, 27 C.F.R. § 478.11. See, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution.").

32.    Under MHL 9.39, an individual "Emergency admissions for immediate observation, care, and treatment", a hospital "may receive and retain therein as a patient for a

---

[9] Upon performing a background check, NICS will provide the FFL with one of 3 responses: "Proceed", "Deny" or "Delay". If an individual is listed in the NICS database as a person prohibited from purchasing, possessing, and/or receiving firearms (a "prohibited person"), NICS will issue a "Deny", which indicates to the FFL that the individual is prohibited from receiving and/or possessing firearms under state or federal law. A "Deny" response prohibits the FFL from transferring a firearm to such individual.

period of fifteen days any person *alleged to have a mental illness* for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others."[10] (emphasis added).

33.    Individuals admitted under MHL 9.39 are only *alleged* to have a mental illness and are retained for emergency observation, care and/or treatment.

34.    An admission under MHL 9.39 "Emergency admissions for immediate observation, care, and treatment" does not fall within the definition of having been "Committed to a Mental Institution."[11]

35.    An admission under MHL 9.39 is not a finding or adjudication (formal or otherwise) that an individual *has* a mental illness.

36.    Persons in a mental institution for observation or on a voluntary basis are not within the purview of the federal firearms statute.

37.    Under MHL 9.39(a)(2), even if a court were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court *shall not be deemed to be an adjudication that the patient is mentally ill*, but only a determination that there is reasonable cause to retain the patient for the purposes of this section." (emphasis added).

38.    No New York State or federal law authorizes OMH to collect, retain, modify, or transmit data or records for inclusion in the NICS system of individuals who were only subject to "emergency observation and evaluation" and not converted to "involuntary commitment" in a mental health facility, including individuals admitted pursuant to MHL 9.39.

---

[10] "Likelihood of serious harm" shall mean: 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm." MHL § 37 (b).

[11] Even if a court were to determine that there was "reasonable cause" to confine the individual under MHL 9.39, "such order entered by the court shall not be deemed to be an adjudication that the patient is mentally ill, but only a determination that there is reasonable cause to retain the patient for the purposes of this section." MHL 9.39(a)(2).

39.     An individual identified in State mental health database and/or the NICS database as having been "involuntarily committed to a mental institution" will be prohibited from purchasing or receiving any firearm until their information is no longer maintained in the State mental health database and /or the NICS database.

***OMH: Improper Transmission of Mental Health Records to the NYSP and NICS***

40.     OMH and the SAFE Act Office (collectively "OMH") have a policy and procedure established and/or implemented by Sullivan and/or DOES 1-10 of transmitting the mental health records and personal identifying information to NICS of individuals who were not involuntarily committed (the "Policy") and/or have suffered no event disqualifying them under federal or state law from possessing firearms.

41.     The records transmitted to NICS and the FBI CJIS[12] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. See, 14 NYCRR 543.1(b).

42.     The OMH policies enforced and implemented by Sullivan and DOES 1-10 require and/or cause the transmission to NICS the records of people who were admitted to a hospital only for "emergency evaluation and observation" under MHL 9.39.

43.     Defendants only have authority to collect, retain, modify, or transmit records pertaining to people who have been **involuntarily committed** pursuant to MHL Article 9 or 10, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act[13], and thus they know and/or should know

---

[12] References to NICS and the FBI/CJIS are collectively referred to hereafter as "NICS".
[13] 14 NYCRR § 543.1(c) (emphasis added).

by reason of their position that maintaining information related to individuals who have been admitted under MHL 9.39 is outside of the scope of their authority.

44.     Defendants know and/or should know by reason of their position that communicating to NICS and other agencies that individuals admitted under MHL 9.39 were "involuntarily committed" and/or "adjudicated as mentally ill" for purposes of identifying such individuals as prohibited from firearm possession under 922(g), is a false representation of that individual's firearm eligibility status.

45.     Written communications from OMH and the SAFE Act Office acknowledge:

> "The records which OMH transmits are **limited to persons** who have been **involuntarily committed** to a psychiatric hospital pursuant to Article 9 or 10 of the NYS Mental Hygiene Law (MHL), Article 730 or Section 330.20 of the NYS Criminal Procedure Law, Section 402 of or 508 of the NYS Correction Law or Sections 322.2 or 353.4 of the NYS Family Court Act."

(emphasis added).

46.     By collecting, retaining, modifying, and/or transmitting records pertaining to people who were only admitted for evaluation and observation under MHL 9.39, the State Defendants are falsely identifying to NICS that such individuals, like Plaintiff, were "involuntarily committed in a mental institution" for purposes of identifying them as persons prohibited from possessing firearms, which they were not.

47.     Defendants' inclusion of such individuals, like Plaintiff, in the State mental health database for NICS reporting, is done intentionally, maliciously and/or in deliberate disregard of such individual's constitutional rights.

48.     Defendants know and intend for individuals whose personal identifying information is retained in the State mental health database for NICS reporting will be permanently

barred by NICS from purchasing, possessing, and/or receiving firearms permanently and/or until Defendants correct and/or remove such records from the state database.

49.    Defendants' enforcement of such policies and procedures constitutes a total and absolute barrier to the exercise of Second Amendment rights by individuals admitted to a hospital under MHL 9.39, like Plaintiff.

50.    Defendants' enforcement of such policies and procedures violates the Second Amendment, as applied to the states through the Fourteenth Amendment.

51.    There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness.

52.    Sullivan failed to train, supervise and/or discipline their staff including DOES 1-10, to know that they have no authority to collect, retain, modify, and/or transmit records pertaining to people who were only admitted for evaluation and observation under MHL 9.39; and that being admitted for "observation and evaluation" does not mean that the person was "involuntarily committed to a mental hospital" for NICS reporting purposes or otherwise; and that being admitted for evaluation and observation under MHL 9.39 does not constitute a prohibitor to possessing, purchasing, and/or receiving firearms for purpose of NICS reporting under state or federal law.

53.    Sullivan's failure to train, supervise and/or discipline their staff has caused and continues to cause the improper transmission of mental health records and personal identifying information to NICS of numerous individuals, like Plaintiff, who are falsely identified to NICS as having been "involuntarily committed to a mental institution".

54.    Defendants' failure to train, supervise and/or discipline their staff has resulted the deprivation of Second and Fourteenth Amendment rights – the right to possess, purchase, and carry

firearms – for those individuals, including Plaintiff, who have only been admitted for evaluation and observation under MHL 9.39.

55.     Sullivan's failure to train, supervise and/or discipline her staff resulted in the violation of, *inter alia,* Plaintiff's Fourth Amendment rights.

### *MHL 7.09(j) is Overbroad and Violates the Second and Fourteenth Amendments*

56.     Under MHL 7.09(j)(1) the commissioner, in cooperation with other applicable state agencies, ***shall*** collect, retain or modify data or records, and ***shall*** transmit such data or records: (i) DCJS or FBI/CJIS for the purposes of responding to queries to NICS regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3) or (ii) to DCJS which may re-disclose such data and records only for determining whether a license issued pursuant to section 400.00 of the penal law should be denied, suspended or revoked, under subdivision eleven of such section, or for determining whether a person is no longer permitted under federal or state law to possess a firearm. (cleaned up) (emphasis added).

57.     Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons ***who have been involuntarily committed to a hospital pursuant to article nine*** of this chapter…. (cleaned up). MHL 7.09(j)(1).

58.     A person admitted under MHL 9.39 is only alleged to have a mental illness and is admitted for emergency observation, care, and treatment.

59.     Even an individual ***involuntarily*** admitted under MHL 9.39 is still only ***alleged*** to have a mental illness.

60.     MHL 7.09(j)(1) is overbroad in that it authorizes reporting of all individuals who are involuntarily committed pursuant to any provision of Article 9, which includes those individuals only ***alleged*** to have a mental illness.

61.     Individuals only **alleged** to have a mental illness are **not** prohibited from firearm possession.

62.     MHL 7.09(j)(1) implicates, and violates, the Second and Fourteenth Amendments.

63.     There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness.

***Barring Firearms for MHL 9.39 Admission Violates the Second and Fourteenth Amendments***

64.     In addition to the foregoing, MHL 9.39 neither contemplates nor addresses the issue of whether a person who threatens or attempts suicide is "mentally ill."

65.     New York law has recognized a critical distinction between those who end their life in a rational state of mind and those who do so as a result of a mental illness – "[s]uicide involves the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self-slaughter by an insane man or a lunatic is not an act of suicide within the meaning of the law." *Hines v. Doe*, No. 951-23, 2023 WL 2320234, at *3 (N.Y. Sup. Ct. Mar. 1, 2023) (concluding that "a suicidal ideation or attempt is not mental illness per se") quoting, *Breasted v Farmers' Loan & Trust Co.*, 4 Hill 73, 75 (Sup Ct 1843); and citing, *Myers v Schneiderman*, 30 NY3d 1, 12 (2017) (implying that suicide, by definition, must bear the indicia of rationality: suicide has long been understood as "the act or an instance of taking one's own life *voluntarily and intentionally*) (emphasis supplied); The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations 1647-1719, p 19 (J Cushing ed 1977) (noting that as early as 1647 Rhode Island made a distinction between rational suicide and suicide with mental illness: "[if a man] kills himself of a premeditated hatred against his own life: . . . his goods and

chattels are the king's custom; *but in case he be an infant, a lunatic, or mad*, he forfeits nothing")
(emphasis supplied).

## MATERIAL FACTS

### *Samaritan Hospital - 2019*

66.     In 2019, Plaintiff was on active duty in the United States Military and stationed at
Fort Drum in Jefferson County, New York. At all times relevant herein, Plaintiff was assigned to
the Infantry Division and had access to firearms.

67.     On January 28, 2019, Plaintiff voluntarily requested that he be taken to Samaritan
Hospital ("Samaritan") to speak with someone because he had been feeling depressed.

68.     Plaintiff was voluntarily transported by the U.S. Military Police to Samaritan.

69.     Plaintiff was admitted to Samaritan under MHL 9.39 "Emergency Admission."

70.     Plaintiff's admission status at Samaritan remained under MHL 9.39 until he was
discharged on February 5, 2019.

71.     By being released after a period of psychiatric evaluation and observation, Plaintiff
was deemed by Samaritan Hospital not to be a danger to himself or others.

72.     Had Plaintiff been evaluated and deemed by a psychiatrist to be a danger to himself
or others, Plaintiff would not have been released from the mental health facility his status would
have been converted under MHL 9.27 or 9.37.

73.     Plaintiff was never involuntarily committed to Samaritan, or any other hospital.

74.     Plaintiff was never converted to an involuntary admission or commitment under the
MHL.

75.     Plaintiff was never determined to suffer from a mental illness, within the meaning
of 18 USC 922(g) or otherwise.

76.     Plaintiff was never directed by a court or other authority directing him to receive treatment for a mental health condition.

77.     Upon his unconditional release from Samaritan, Plaintiff returned to the Infantry Unit at Fort Drum, continued to have access to firearms, and continued to serve the remainder of his commitment to the United States Army.

78.     Plaintiff was Honorably Discharged from the U.S. Army on April 15, 2020.

79.     Plaintiff had no prior mental health related hospitalizations and has had no such hospitalization since 2019.

80.     The Second Amendment's "longstanding prohibition[ ] on the possession of firearms by the mentally ill" [*D.C. v. Heller*, 554 U.S. 570, 626 (2008)] is inapplicable to Plaintiff.

***NICS Denial of Firearm Purchase in 2022***

81.     In 2022, Plaintiff attempted to purchase a firearm through a federal firearm licensee (FFL/gun store).

82.     Plaintiff subjected himself to a background check through the NICS system, which denied his purchase.

83.     By letter dated September 12, 2022, Plaintiff was advised by the FBI that his firearm purchase was denied by NICS because, according to their records, he has been "adjudicated as a mental defective or who has been committed to a mental institution" within the meaning of 18 USC 922(g)(4) (the "FBI Letter").

84.     Defendants alone are the source of the FBI's derogatory information about Plaintiff.

85.     The FBI Letter directed Plaintiff to contact the "NICS Appeals and SAFE Act, Post Office Box 66329, Albany, NY 12206, Telephone: 518-549-1180, NICS Record Identifier (NRI): 1832472850" to obtain further information relating to the prohibiting record.

86.     The FBI Letter informed, "No further action will be taken until documentation is provided by the contributing agency or you notify the FBI that the record has been updated," meaning that Plaintiff will continue to be denied any purchases through the NICS system, and the FBI will continues to identify him as a person prohibited from possessing firearms, until Defendants remove his information from the state database and/or inform the FBI that he is not a prohibited person.

***Plaintiff's Application for – and Denial of -  Certificate of Relief From the SAFE Act Office***

87.     To remove himself from the SAFE Act database (and NICS), Plaintiff researched the requirements for applying to the SAFE Act Office for a Certificate of Relief from Civil Disabilities.

88.     Plaintiff provided the SAFE Act Office with all of the required documents, including his complete medical records from Samaritan in 2019.

89.     The SAFE Act Office, including one or more of the Doe Defendants, reviewed the documents, including Plaintiff's complete medical records from Samaritan in 2019.

90.     One or more of the Doe Defendants learned from Plaintiff's Samaritan records that he (i) was not involuntarily admitted to Samaritan; (ii) went to Samaritan Hospital voluntarily; (iii) was admitted to the hospital under MHL 9.39; (iv) was never converted to any other commitment status; and (v) was released without any conditions.

91.     Defendants also learned that Plaintiff has no prior arrests, charges, or convictions and that he has no disqualifiers to firearm possession, as Plaintiff's certificate of relief application packet contained, *inter alia*, his fingerprint-based criminal history report from the FBI and New York State Division of Criminal Justice Services.

92.    On or about July 28, 2022, Defendants denied Plaintiff's application for a Certificate of Relief and have not removed Plaintiff's records and identifying information from the state database.

93.    There is no New York State or federal statute that prohibits the purchase, possession, receipt, and/or ownership of firearms for simply being subject to admission for an emergency evaluation and observation.

94.    Plaintiff is unable to legally purchase or possess any firearms as a result of Defendants' inclusion of Plaintiff's information as a prohibited person in the SAFE Act database and the communication to the federal government, including NICS, that Plaintiff is a prohibited person.

95.    Defendants continue to knowingly and falsely communicate to, *inter alia*, NICS that Plaintiff is firearms-ineligible as a result of his 2019 admission to Samaritan.

96.    Defendants never provided Plaintiff notice or an opportunity to be heard regarding (i) Defendants' (false) classification of Plaintiff as a person prohibited from firearm possession due to a 'mental illness' or 'involuntary commitment'; (ii) his personal identifying information being maintained in the state database as a prohibited person; or (iii) that Defendants were identifying Plaintiff to NICS and the FBI as a prohibited person.

97.    It is Defendants' policy and procedure not to provide individuals whose information is maintained in the state database for firearm reporting purposes with either prompt notice and/or an opportunity to be heard regarding their inclusion in the state database.

98.    Defendants have no process or procedure to notify individuals when (and that) their personal identifying information (i) has been entered into the SAFE Act database for NICS

reporting purposes, or (ii) is being communicated to NICS to prevent Second Amendment-protected activity, which violates the Fourteenth Amendment right to due process.

99.     Widespread violations of the Second and Fourteenth Amendments exist because of Defendants' implementation of policies and procedures set forth herein.

100.    Defendants knowingly, intentionally, and deliberately disregard the fact that Plaintiff was not involuntarily committed to a mental health facility; that they have no statutory authority to communicate to, *inter alia*, NICS that Plaintiff was "involuntarily committed" to a mental health facility; and that their refusal to remove Plaintiff from the SAFE Act database is violating his constitutional rights.

101.    Defendants' refusal to remove Plaintiff from the SAFE Act database is knowing, malicious, deliberately indifferent to and in reckless disregard for Plaintiff's constitutional rights.

102.    Sullivan exhibited deliberate indifference to Plaintiff's constitutional rights, through her failure to train, supervise, monitor, and discipline her staff, employees, and agents as set forth herein.

103.    No reasonable individual in Defendants' position would believe that continuing to maintain Plaintiff's personal identifying information in the SAFE Act mental health database is reasonable or lawful.

104.    Plaintiff's right to possess, purchase, and carry firearms for self-defense, presumptively protected by the Second and Fourteenth Amendments, are being violated as set forth herein.

105.    In addition to the presumptive harm caused by Defendants' ban of Plaintiff's exercise of his Second Amendment rights, the NICS denial caused Plaintiff public embarrassment and humiliation, and he has been prevented from the use and enjoyment if his firearms, the ability

to target shoot, hunt, and defend himself therewith, and the peace of mind that comes with being armed to protect himself and his family.

106.    Defendants have further caused Plaintiff to suffer, *inter alia*, the violation of his Second Amendment rights resulting in *per se* compensatory damages in at least a nominal amount, economic loss, pain and suffering, loss of the use and enjoyment of his property (firearms), reputational harm, emotional upset and the physical manifestations of same, embarrassment, and frustration.

## DECLARATORY JUDGMENT ALLEGATIONS

107.    There is an actual and present controversy between the parties. Plaintiff contends that his Second and Fourteenth Amendment rights were, and are continuing to be, violated by Defendants' actions and failures to act.

108.    Defendants are the proximate cause of Plaintiff's inability to purchase, possess, and/or receive firearms in violation of his right to possess and carry firearms for self-protection as guaranteed by the Second Amendment. See, *D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").

109.    Because of the information communicated by Defendants to NICS and/or the FBI, Plaintiff is permanently prevented from purchasing, possessing, and/or receiving any firearm.

110.    Plaintiff will continue to be denied the right to purchase, possess, and/or receive any firearm so long as he continues to be identified by Defendants to, *inter alia*, NICS and/or the FBI as an individual who has been "involuntarily committed" to a mental health facility.

111.    Plaintiff seeks a declaration from this Court that being subject to an "emergency evaluation and observation" under MHL 9.39 does not cause the termination of Second

19

Amendment rights; and that inclusion in the state's reporting database(s) based on a MHL 9.39 admission violates the Second and Fourteenth Amendments.

112.    Plaintiff seeks a declaration that Defendants' policies and procedures violate the Fourth Amendment, and Fourteenth Amendment right to Due Process.

113.    Plaintiff seeks a declaration that MHL 7.09(j)(1) is unconstitutionally overbroad.

**INJUNCTIVE RELIEF ALLEGATIONS**

114.    Defendants are causing Plaintiff to suffer an injury-in-fact by prohibiting his exercise of the rights protected by the Second and Fourteenth Amendments.

115.    Defendants' conduct has permanently terminated Plaintiff's ability to purchase, possess, and/or receive firearms.

116.    Defendants' conduct is unauthorized and without any legal privilege. Plaintiff does not fit the criteria for Defendants' collection, retention, modification, and/or transmission to NICS and/or for being reported to NICS as a person prohibited from purchasing, possessing and/or receiving firearms due to an involuntary commitment to a mental institution and/or adjudication as mentally defective within the meaning of 18 U.S.C. § 922(g) and/or state law.

117.    Without the requested injunctive relief, Plaintiff will continue to suffer concrete and actual constitutional harm, to wit, the inability to purchase, possess, and/or receive firearms.

## AS AND FOR A FIRST CAUSE OF ACTION

### [Second and Fourteenth Amendments, 42 U.S.C. § 1983]

118.    Repeats and realleges paragraphs 1 through 117 as if set forth in their entirety herein.

119.    Under the theory that Defendants are liable to Plaintiff for violating his Second Amendment rights, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### [Fourth Amendment, 42 U.S.C. § 1983]

120.    Repeats and realleges paragraphs 1 through 119 as if set forth in their entirety herein.

121.    Under the theory that Defendants are liable to Plaintiff for violating his Fourth Amendment rights for failing to train, supervise, monitor, and discipline. 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

### [Fourteenth Amendment – Predeprivation Due Process, 42 U.S.C. § 1983]

122.    Repeats and realleges paragraphs 1 through 121 as if set forth in their entirety herein.

123.    Under the theory that Defendants are liable to Plaintiff for violating his Fourteenth Amendment right to predeprivation due process. 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

**[Fourteenth Amendment – Postdeprivation Due Process, 42 U.S.C. § 1983]**

124.    Repeats and realleges paragraphs 1 through 123 as if set forth in their entirety herein.

125.    Under the theory that Defendants are liable to Plaintiff for violating his Fourteenth Amendment right to due process. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment and order:

- Declaring that being admitted for "emergency evaluation and observation" under MHL 9.39 does not cause the termination of Second Amendment rights;

- Declaring that and that inclusion in the state's reporting database(s) based on a MHL 9.39 admission violates the Second and Fourteenth Amendments;

- Declaring that the actions and failures to act of Defendants Sullivan, and/or the Does in failing to train, supervise and/or discipline their staff as set forth herein violates the Fourth Amendment;

- Declaring that Defendants' policies and procedures violate the Fourteenth Amendment right to Due Process;

- Declaring that MHL 7.09(j)(1) is unconstitutionally overbroad;

- Preliminarily and permanently enjoining Defendants' inclusion and maintenance of Plaintiff's records information in the state database;

- Preliminarily and permanently enjoining Defendants' reporting to NICS and any other database information concerning Plaintiff that identifies him as a person prohibited from

possessing, purchasing, transferring, or receiving firearms in connection with his 2019 admission to Samaritan Hospital;

- Preliminarily and permanently enjoining Defendants from collecting, retaining, modifying, and/or transmitting the records and personal identifying information to NICS, the FBI, or any other law enforcement agency and third party of individuals who have been admitted to a mental health facility for emergency evaluation and observation under MHL 9.39 and discharged without conversion to MHL 9.27 or 9.37;

- Awarding Plaintiff compensatory and economic damages against the individual defendants in at least a nominal amount;

- Awarding nominal damages against all Defendants;

- Awarding Plaintiff punitive damages against the individual defendants;

- A declaration that Plaintiff is the prevailing party of this action for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988;

- Awarding reasonable statutory attorney's fees under 42 U.S.C. § 1988;

- Awarding costs and disbursements; and

- Such other, further, and different relief as this Court may deem just and proper.

Dated: March  17, 2023
       Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

By:     *Amy L. Bellantoni*
        Amy L. Bellantoni, Esq.
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        abell@bellantoni-law.com