

February 8, 2024

**VIA ECF**

Hon. Daniel J. Stewart
James T. Foley U.S. Courthouse
445 Broadway – 4th Floor
Albany, NY 12207

      Re:    *Richey v. Sullivan*, 1:23-cv-00344-AMN-DJS

Dear Judge Stewart:

      I represent the plaintiff, Isaac Richey, in the above-referenced matter. Please accept the following as Plaintiff's status letter concerning the discovery dispute between the parties.

      First, I apologize to the Court for the lateness of this filing. To explain, late yesterday afternoon, I was presented with a proposed joint status letter drafted by defense counsel. I made corrections to the plaintiff's position and emailed the letter back counsel this morning at 10:39 a.m., indicating, "I have separated out Defendants' and Plaintiff's positions in the status letter. If you have any changes to Defendants' portion, please send me a draft to allow for a response, if any."

      I did not hear from counsel until 3:54 p.m., at which time they informed me that Defendants would not be submitting the joint status letter. Rather, they would be submitting their own separate letter, and that I should "feel free to do the same." An obvious conclusion, as the Court had directed both parties to provide an update.

      But despite my request this morning, that I have an opportunity to respond to their position, defense counsel waited until 4:47 p.m. to file their letter.

      At that time, I was completing a reply in an attorney fee motion, also due this afternoon, in *Taveras v. New York City,* 20-1200 (AS) (S.D.N.Y.) and I could not immediately turn to reviewing counsel's letter or drafting a separate joint status letter.[1]

      I have just now had the opportunity to review counsel's letter and, respectfully, submit the following for the Court's consideration.

---

[1] It remains unclear why counsel could not have simply amended their portion of the already-drafted joint letter, or why no notice was provided to me earlier in the day.

The parties met and conferred on February 7, 2024 regarding the outstanding discovery disputes but significant obstacles remain, consistent with Plaintiff's letter requesting a conference.

First, as previously stated, the Complaint names several "DOES" in its caption and the body of the complaint. Such individuals were involved in, and/or responsible for, making a decision that violated Plaintiff's constitutional rights, and are sued in their individual capacity.

Plaintiff is challenging the enforcement of SAFE Act Office policies and state statutes that are unconstitutional and should be enjoined. At least three (3) of the DOES are the Panel Members who were personally involved in enforcing the challenged policies and procedures of the SAFE Act Office, which led to the violation of Plaintiff's constitutional rights.

Defense counsel has withheld the identity of witnesses, redacted emails to prevent Plaintiff from learning who they are – preventing subpoenas and/or Notices of Deposition – and refuses to provide documents concerning Panel Members' credentials, job descriptions, and professional experience/backgrounds.

No valid legal privilege has been asserted by counsel for withholding the requested information and documents. Counsel's "safety" concerns are speculative and have no basis in fact. Government actors cannot be shielded from being held accountable for constitutional violations, and it violates public policy to continue to shroud the SAFE Act Office and its procedures from the public. Plaintiff has a right to depose those involved in enforcing the state's regulations and the policies – and witnesses thereto. In any event, the "safety" privilege pertains to "public safety," not a government actor's individual fears.[2]

As I indicated to counsel, who describe the NICS Panel Members as "nonparties" – the Panel Members will be named in this Complaint. At least three (3) of the DOES are Panel Members. The State is acting in bad faith to protect information that will inevitably be made public.

Counsel's representation that no documents exist that reflect job descriptions, credentials, professional experience and the like for the Panel Members is unlikely. Every job, particularly those with a government agency, has a description of duties. The idea that no such documents exist relating to the NICS Panel Members further highlights the obscurity and nefariousness of this agency.

Second, this case challenges the policies and procedures of the SAFE Act Office and the state's regulations related to reporting individuals to NICS as being firearms-prohibited based on mental health reasons.

The enforcement of such policies and regulations by the defendants led directly to the determination to deny Plaintiff's application to be removed from the NICS reporting database.

The final decision by defendants not to remove Plaintiff from the database was based on a finite world of information, all of which is in the possession of defendants/the SAFE Act Office. The list of

---

[2] Indeed, police officers make arrests, execute search warrants, and file "Red Flag" warrant applications routinely in New York State; I have yet to see a civil rights case in which their identities are hidden from the individual who is trying to sue them. And, lest some analogy be made to undercover officers, their identities are kept secret because there are ongoing investigations and prosecutions pending, the integrity of which is dependent on the undercovers' identity remaining an "alias."

documents and information relied on by the defendants is reflected in the defendants' July 28, 2022 letter denying Plaintiff's application. To allow the defendants to now search for other documents and information that is neither relevant nor material to the challenged policies and regulations – and the defendants' enforcement thereof – is unduly prejudicial to Plaintiff and has no probative value. Extrajudicial information is neither material nor relevant to the claims and defenses at issue here.

Counsel could not even find a case in this Circuit supporting this untenable position, and resorted to a Fourth Circuit case. But even there, the 4th Circuit reasoned that, because the city had <u>no information</u> about the organizational plaintiff challenging the city's regulations, the City was entitled to learn more about "the distinctive characteristics of Baltimore's various limited-service pregnancy centers." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013).

The present case is wholly inapposite. <u>Defendants already have the records they are seeking</u> – they were turned over to Plaintiff by the defendants in discovery. And, unlike *Baltimore*, the defendants have already conducted their inquiry into Plaintiff and have applied the challenged policies and regulations against him.

Defendants' reasons for seeking HIPAA authorizations for documents they already have, that were provided to Plaintiff in discovery, and were relied on to make their determination about Plaintiff's application remain unknown but, in any event, they serve no legitimate purpose. Defendants cannot try to "dirty up" Plaintiff in this lawsuit to justify their past conduct.

Thank you for the Court's consideration.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni