```
                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF NEW YORK


ISAAC RICHEY,                            )
                                         )
                                         )
           Plaintiff,                    ) CASE NO. 23-CV-344
                                         )
    vs.                                  )
                                         )
ANN MARIE T. SULLIVAN, et al.,           )
                                         )
           Defendants.                   )
_____)
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HON. DANIEL J. STEWART**
**TUESDAY, FEBRUARY 13, 2024**
**ALBANY, NEW YORK**

**FOR THE PLAINTIFF:**
   THE BELLANTONI LAW FIRM, PLLC
   By:  AMY L. BELLANTONI, ESQ.
   2 Overhill Road, Suite 400
   Scarsdale, New York 10583

**FOR THE DEFENDANTS:**
   NEW YORK STATE ATTORNEY GENERAL
   By:  SHANNAN COLLIER KRASNOKUTSKI, ESQ. and
   MARK G. MITCHELL, ESQ.
   The Capitol
   Albany, New York 12224

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

1                    (Teleconference.)

2            THE CLERK:  We are on the record.  The case number is

3   1:23-CV-344, Richey v. Sullivan et al.  Can I ask who is on the

4   call for plaintiff?

5            MS. BELLANTONI:  Good morning.  Amy Bellantoni for

6   Isaac Richey.

7            THE CLERK:  Thank you.  And for defendants?

8            MS. KRASNOKUTSKI:  This is Shannan Krasnokutski, and

9   I'm here with my colleague Mark Mitchell from the Attorney

10  General.

11           THE CLERK:  Thank you.  Go ahead, Judge.

12           THE COURT:  Good morning, everybody.  So we're here to

13  solve problems in this case.  I've received and reviewed the

14  various letters that have been sent back and forth.  It looks to

15  me like there are a couple issues.  One, I've got to extend the

16  deadlines to accommodate the completion of discovery.  So we'll

17  get that done.

18           Then there was a dispute with regard to records

19  regarding the names of members of the panel or John or Jane Does

20  and issues of a protective order, I think in connection with

21  that.

22           And the third involves medical records or HIPAA

23  authorizations involving the plaintiff.

24           So why don't we start with the names of the

25  individuals.  Shannan, what's your position with regard to that

**Richey v. Sullivan et al. - 23-CV-344**

1  discovery?

2  MS. KRASNOKUTSKI: Well, actually I became aware

3  yesterday. What I actually think I'd like as of today, and I

4  don't know if the Court is aware. It's only going to be me for

5  a brief moment here. My last day with this office is tomorrow.

6  So after tomorrow, it's actually going to be Mark carrying on,

7  and Mark is on the phone here, but it's been me up to now.

8  THE COURT: This is why we scheduled a conference for

9  today because we wanted to suck as much as we could from you.

10 What new agency are you going to?

11 MS. KRASNOKUTSKI: I'm actually going to be with the

12 Industrial Board of Appeals. So I don't actually think you're

13 going to really hear from me in that capacity. It'll be

14 remarkably quiet from me.

15 THE COURT: I see a lot of future excitement in that

16 position. Well, congratulations.

17 And Mark, welcome to the case.

18 So let's benefit from your knowledge for at least one

19 more day in this case. What do you suggest?

20 MS. KRASNOKUTSKI: I'm happy to do that. So while I

21 guess, here's -- look. We -- it has been our position that

22 there are some, you know, legitimate safety and security

23 concerns, particularly with this individual as pertains to the

24 names of these individuals.

25 Having said that, I am aware and I just became aware

**Richey v. Sullivan et al. - 23-CV-344**

1  yesterday that Ms. Bellantoni filed a case in the Western
2  District of New York I believe Friday, and she's actually sued
3  two of the panel members personally in the Western District of
4  New York.  So it seems that she has sued two of these members,
5  and that's a publicly available case as far as I know.  So that
6  is I think a new development, as far as I'm concerned, that I
7  need some time to discuss with my client.
8              THE COURT:  Okay.
9              MS. KRASNOKUTSKI:  So if I could actually -- I mean or
10 Mark could have some time to discuss with our client how that
11 affects our position, that would be helpful.
12             THE COURT:  Amy, let me ask you.  What are
13 specifically -- obviously you do this work a lot.  So you have
14 some information.  What are the documents that you're looking
15 for, and how many people are you looking to add as far as panel
16 members if you do an amended complaint?
17             MS. BELLANTONI:  So it did become -- I did recently
18 learn not through this information unfortunately, but did learn
19 the names of two of the panel members, as Shannan had indicated,
20 and which two were named in the complaint in the Western
21 District.  So those, Dr. Grace Lee and Carmen Barber, I'd be
22 looking to identify in this complaint, which Mr. Richey has two
23 of the panel members.  That would be helpful.
24             The third panel member in the documents that were
25 produced by the state is identified with the initials TT as in

**Richey v. Sullivan et al. - 23-CV-344**

1   Tom, and none of the Rule 26 disclosure that has been provided
2   by the state in this case -- it has numerous names on it.  I
3   would say roughly 40, maybe 50 names.  None of them have those
4   initials.  So it's my understanding that the panel members, at
5   least that panel member was not even identified in the Rule 26
6   disclosure.  That would be a third panel member that I would
7   like to identify a name, but I cannot do that at this point
8   because I just don't know who that person is.
9            THE COURT:  All right.
10           MS. BELLANTONI:  And as far as documents -- go ahead.
11           THE COURT:  No.  I'm just trying to figure out how to
12  facilitate this.
13           So Shannan, let me ask you again.  If there was a
14  protective order that provided confidentiality of the documents
15  that the plaintiffs were seeking, does that ease your concern?
16  I mean at some point in time, if she amends the complaint to add
17  individuals by name, you know, that --
18           MS. KRASNOKUTSKI:  I'm sorry, Your Honor.  You
19  actually cut out for a brief period of time, but I think what
20  you had said was that could this be addressed with a protective
21  order?
22           THE COURT:  Correct.  I'm just trying to figure out
23  the best way to move the case forward.  So there's documents
24  which the plaintiffs say that they need which you have.  You
25  have a concern with regard to issues, safety issues that may

1 be -- I'm never opposed to doing protective orders.  I don't
2 know if that solves --
3             MS. KRASNOKUTSKI:  That's what I -- I'm sorry.  I had
4 proposed that to Ms. Bellantoni, and Ms. Bellantoni was not
5 willing to do that because she had indicated she wanted to amend
6 her complaint to name the individuals.  My position on that had
7 been, you know, we're not there yet.  At this point, we're
8 exchanging discovery.
9             MS. BELLANTONI:  I was opposed to entering into a
10 protective order because the protective order up to this point
11 intended to put a bubble around the identities of the panel
12 members and witnesses to the events that make the -- form the
13 basis for the allegations in the complaint.  So if we're not
14 going to be shielding the identities of the panel members, then
15 I'm happy to enter into a protective order, and I'm happy to be
16 able in that protective order to challenge whatever documents
17 are being deemed attorneys' eyes only by the state, but I do
18 anticipate that will be overbroad.
19             THE COURT:  Right.
20             MS. KRASNOKUTSKI:  That's --
21             THE COURT:  Hold on.
22             MS. KRASNOKUTSKI:  Sorry.  I'm sorry, Your Honor.  Go
23 ahead.
24             THE COURT:  I mean if there's a protective order in
25 place, first of all, there's no First Amendment right of access

1  to discovery.  If there's a protective order in place, then
2  counsel gets to see the names.
3          Obviously, a secondary issue becomes if there's an
4  amended complaint naming the individuals in the amended
5  complaint, because that is something that there's First
6  Amendment protections under Lugosch.  So just as a preliminary
7  matter, you need the documents.  One way to get the documents is
8  to enter into a protective order, which either you could agree
9  to or I could order.  So what's your objection to that?
10         MS. BELLANTONI:  Are you speaking to me, Judge,
11 Ms. Bellantoni?
12         THE COURT:  Yes, I am, Amy.  Thanks.
13         MS. BELLANTONI:  Yes.  No, I don't have an objection
14 as long as the -- they're going to be named.  They're
15 defendants.  There's no legal basis for them not to be named as
16 defendants here.  That's going to be public.  It's public
17 already for two of them.
18         Moving on from that, yes.  With regard to documents, I
19 don't have an objection to entering into a protective order with
20 regard to documents.  I would like to try -- which we tried, but
21 maybe we could try again -- to identify documents that should
22 not be attorneys' eyes only and/or should not be marked
23 confidential.  But if that's the case, then certainly the
24 protective order would allow me to move before the Court for
25 certain documents, if necessary, to be not subject to a

8

**Richey v. Sullivan et al. - 23-CV-344**

1  protective order.  I don't want to waste the Court's time.  I
2  like to resolve things before having to come to the Court with
3  them.
4          THE COURT:  Correct.  So normally, the protective
5  orders that I sign have a provision for designation of it.  For
6  example, attorneys' eyes only.  And then if it's overdesignated,
7  there's a relief provision that's allowed.
8          And ultimately, you know, obviously, if you make a
9  motion to amend the complaint, that's a Court document.  So
10 that's -- unless the names are filed under seal for some good
11 reason, which I won't prejudge, but it doesn't seem like that's
12 the case here, then that's going to come out.
13         If you want, Ms. Krasnokutski, if you want time to
14 just consider it, because the way I see this going, if there's
15 going to be a proposed amendment, normally, I'd like to have the
16 plaintiff draft a proposed amendment and submit it to defense
17 counsel so that they can consider whether they would consent to
18 it.  And if so, then we don't need a motion.  If not, you can
19 come back to me, and we'll consider it.  So --
20         MS. KRASNOKUTSKI:  Yes, because this was basically --
21 I'm sorry.  Go on.
22         THE COURT:  No, but Shannan, just identify yourself.
23 So I have a court reporter here trying to take down things.
24         MS. KRASNOKUTSKI:  Oh, I'm so sorry, Your Honor.  That
25 was Shannan Krasnokutski incorrectly interrupting.

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**Richey v. Sullivan et al. - 23-CV-344**

1    THE COURT: All right. You can continue.

2    MS. KRASNOKUTSKI: That was essentially what I had
3 proposed, and it was particularly the names that we had wanted
4 to protect due to the security concerns. The point that I had
5 made to Ms. Bellantoni was that if we got to the point of
6 amending a complaint and if after seeing the discovery, she
7 wanted to amend the complaint, she would have to make that
8 motion to the Court, and that's a completely different context
9 than exchanging the discovery is, and I just simply don't think
10 that that's where we are. And that isn't, as you point out, a
11 private document. Whereas exchanging the discovery would be
12 subject to a protective order, amending the complaint would not.
13 So that was the point that I made last week.

14    I do think the fact that a couple of the names are
15 already public is a situation that may, you know, require some
16 additional conferring with our client, and I haven't really had
17 a chance to fully do that yet, in terms of whether that changes
18 their position. But you know, obviously, if -- you know. What
19 I mean is I'm not authorized, you know, yet to, you know, waive
20 the protective order demand in any way, you know, based on any
21 of the names being public. So that's still my position here
22 right now. But you know, I can understand if the Court thinks
23 that make some difference, then I need further time to confer,
24 but as of right now, I just haven't had time to talk about the
25 fact that the names have now become public.

10

**Richey v. Sullivan et al. - 23-CV-344**

1  THE COURT: All right. So why don't we do this. Why
2  don't you send to me a proposed protective order. If everybody
3  can agree to it, that's fine. If not, you can send your
4  competing versions to me. Let's do that within two weeks.
5  Mark, I guess that will fall upon you to do.
6  Then also, Ms. Bellantoni, if you want to prepare --
7  are you in a position to prepare a draft amended complaint,
8  proposed amended complaint?
9  MS. BELLANTONI: Yes. I could do that within the same
10 time frame, yes. That would be possible or maybe even before
11 that so the state could take a look at it and get back to the
12 Court at the same time we send in a proposed protective order.
13 THE COURT: Okay. Why don't you do that. So we can
14 get those two issues resolved. And as far as --
15 MR. MITCHELL: Your Honor, this is Mark Mitchell. Can
16 I just bring up something? I have a trial starting in two
17 weeks. I don't know if it would be possible to move it maybe a
18 week after that.
19 THE COURT: Sure. I can move it to three weeks, but
20 try to -- if you can get the information to your adversary
21 before that, give people a chance to consider things, we'll do
22 that.
23 All right. So Amy, what's your proposal as far as
24 discovery goes? Keep in mind that obviously Mark is just
25 getting into the case. So he's going to need some time to get

1   up to speed.

2               MS. BELLANTONI:  Sure.  Mark had actually mentioned

3   maybe a 90-day window for him just to get up to speed and to

4   complete discovery, but also obviously, Your Honor, factoring

5   into that would be amending the complaint, putting an answer in,

6   and moving forward from there.  So I'm happy to accommodate the

7   state to get up to speed and for us to get back on track here.

8               THE COURT:  So I'm going to extend the discovery until

9   May 31.  That gives a little more time than that, but things are

10  going on.  So May 31, 2024, for the discovery deadline, and then

11  I'll do July 31 for the motion filing deadline.  Is that going

12  to give enough time for people to make motions?

13              MS. BELLANTONI:  I believe so.

14              MR. MITCHELL:  Yes, Your Honor.

15              THE COURT:  Okay.  And then do we anticipate

16  depositions?

17              MS. BELLANTONI:  Yes.

18              MR. MITCHELL:  Yes.

19              THE COURT:  All right.  So then I'm going to move to

20  the third issue with regard to medical records of the plaintiff

21  and HIPAA authorizations.  So Amy, let me ask you about that.

22  What's your objection as far as that goes?

23              MS. BELLANTONI:  So normally, Judge, I wouldn't have a

24  problem, but this is a unique circumstance wherein the state has

25  relied on a finite administrative record to apply the state

1  statute and to make a determination about Mr. Richey's inclusion

2  and continued inclusion in the state NICS reporting database.

3              From our position, so just so the Court is aware, the

4  state has already turned over to us in discovery all of the

5  documents, all of the medical records that they're now seeking

6  to obtain.  All of the records that the defendants have relied

7  on to make their decision have been produced to us in discovery.

8  And at this point, it's our position that the state is just

9  looking to justify their prior decision based on future

10 information that was unknown to the defendants at the time they

11 made the decision.  So I'm not really sure what the purpose of

12 the HIPAA release is other than, like I said, to gain

13 information that they did not have before when they made the

14 decision.

15             This is not -- my understanding is not that they're

16 looking to anything to do with damages.  We're only claiming

17 garden variety damages, not any kind of damages that would

18 require any medical records or testimony from an expert or

19 anything like that, very garden variety, not based on medical

20 history or anything.  So that's the objection.

21             THE COURT:  Okay.  Wouldn't after acquired evidence

22 rule apply in a case such as this?

23             MS. BELLANTONI:  It wouldn't because we're saying --

24 first of all, we're challenging, making a facial challenge to

25 the state statute that allows individuals who are only admitted

1  for emergency observation to be put into a database to
2  disqualify people from firearm possession and where the standard
3  under federal law is they were involuntarily committed.  It's a
4  higher standard and not just an allegation that they had a
5  mental illness, which is what Mental Hygiene Law 9.3 is, just an
6  allegation.  So that's the facial challenge.
7           Then the applied portion of that is that the decision
8  that was made, was made on the documents that the SAFE Act
9  office had in front of it.  So if we're now looking to introduce
10 other outside information that they didn't know, that's neither
11 material nor relevant to their decision back two years ago or
12 more.
13          THE COURT:  But I mean there's a continuing element of
14 the damages here.  I'm just trying to think in some of the
15 employment cases that we've had where through the course of
16 discovery, you know, you have a termination for an impermissible
17 reason.  Then during the course, they find permissible reasons
18 for the termination, and that cuts off the damages.  That would
19 not be applicable in a case such as this?
20          MS. BELLANTONI:  This is not the same type of
21 circumstance as an employment case.  And if that were the case,
22 then I'm happy to talk to my client about just withdrawing
23 compensatory damages claim and going just with a nominal damages
24 claim.
25          THE COURT:  Because I read your complaint.  It does

1  ask for damages from emotional damages and the like.

2  　　　　MS. KRASNOKUTSKI:  Your Honor, may I respond?  I just
3  want to have an opportunity to respond to the damages portion in
4  particular.

5  　　　　THE COURT:  Sure.  Just this is Shannan speaking.

6  　　　　MS. KRASNOKUTSKI:  It is.  I'm sorry.  It's Shannan
7  speaking, yes.

8  　　　　THE COURT:  All right.  Go forward.

9  　　　　MS. KRASNOKUTSKI:  Well, not only does the complaint
10 allege those emotional damages, but while Ms. Bellantoni advises
11 that she seeks garden variety emotional damages, that's not what
12 she discloses in her discovery responses.  Her discovery
13 responses state that he seeks damages for not having been able
14 to pursue opportunities in law enforcement in terms of careers.
15 It indicates that he's lost, you know, things such as
16 friendships because all of his friendships revolved around
17 firearms-related activity.  Societal stigma and expectations due
18 to his military service has led to, you know, stigmatizing him
19 because of his inability to use guns when that's something
20 that's expected of him.

21 　　　　There's just extensive -- there is extensive
22 disclosure as to damages based on this plaintiff's loss of use
23 of his gun rights, and it does completely require further
24 exploration of his psychiatric -- also, much of that has to do
25 with all of the exploration of this mental stigma and its impact

1    on him.  So yeah.  It absolutely requires exploration of those
2    circumstances.
3              THE COURT:  All right.  Well, I don't know.  The
4    plaintiff's counsel has indicated that they may withdraw that
5    aspect of the claim.  That's really up to them, but I did -- in
6    reading the complaint, I did note that there was a significant
7    issue with regard to emotional damages, even though there's also
8    reference in the complaint to nominal damages, but I didn't
9    understand it was going to be limited to a claim of nominal
10   damages.
11             Amy, when you do your proposed amended complaint, are
12   you thinking about changing that?  Where are we going to be?
13             MS. BELLANTONI:  Yeah.  Now that we're fleshing that
14   out, I will definitely speak to my client about that, and if
15   we're -- about whether to proceed with just nominal damages or
16   to proceed with all of the emotional damages that have been
17   discussed in the complaint and discovery responses.  So the
18   amended complaint will definitely address that and shore that
19   up.
20             THE COURT:  All right.  So why don't we do that then.
21   So we will -- do you want to set another conference up in three
22   weeks, or do you just want to write to me and let me know where
23   we stand in three weeks?
24             MS. BELLANTONI:  Why don't we have a conference,
25   Judge.  That way, if Your Honor doesn't mind, we'll have a solid

16

**Richey v. Sullivan et al. - 23-CV-344**

1  conversation with Your Honor and a decision-making path forward.
2  That would be helpful.
3          THE COURT:  Okay.
4          MS. BELLANTONI:  And Judge, just while we're on the
5  phone, the phone conference, I would just like to specify that
6  the HIPAA releases that are being sought are for the records
7  they already have.  So if they're -- I don't recall.  I could be
8  wrong as I sit here, but I don't recall they asked for HIPAA
9  releases for related to the damages portion of it.  If there's
10 been subsequent, you know, therapy that discussed information
11 that was relevant to the damages portion of it and if we're
12 going forward with that damages portion of it, then obviously, I
13 can't -- obviously, they would be entitled to have that
14 information discussing the damages and so forth, but that's not
15 really what they've been asking for.
16         MR. MITCHELL:  -- No. 9.
17         THE COURT:  Mark, you have to start again.
18         MR. MITCHELL:  Sorry.  We made a document demand
19 No. 9.  Plaintiff has had that.  The demand has been out there a
20 long time.  Thank you.
21         MS. BELLANTONI:  Well, in addition to document demand
22 No. 9, they've also been asking for documents they already have.
23 Is that being withdrawn?  I don't know.
24         THE COURT:  We will find out in three weeks.  So let
25 me figure out the date.  It's the 13th today.  We're looking

**Richey v. Sullivan et al. - 23-CV-344**

1  at -- what do we have on March 5, Ganli?

2              THE CLERK:  A couple of Rule 16s.  We could do 11 a.m.

3              THE COURT:  What do we have on the 6th?

4              THE CLERK:  We're good on the 6th.

5              THE COURT:  So we'll have a conference March 6, 10:00.

6  Do you want to do it in person or by phone?

7              MR. MITCHELL:  Your Honor, this is Mark Mitchell.  I

8  think my trial might still be going on that day.

9              THE COURT:  Okay.  Is your trial around here, Mark?

10             MR. MITCHELL:  Sorry.  Go ahead, Your Honor.

11             THE COURT:  How about March 8?

12             MR. MITCHELL:  That will be fine.  Thank you.

13             MS. BELLANTONI:  If we could have it by phone, Your

14  Honor, that would be appreciated.

15             THE COURT:  All right.  We will have it by phone

16  unless there's really substantive issues that resolve.  Then

17  we'll do it in person.  I'll schedule it by telephone March 8.

18  That's a Friday at 10 a.m.

19             And then in the interim, exchange the proposed

20  protective order, the issue of the proposed amended complaint,

21  and discuss further the issue of the authorizations and the

22  records.

23             All right.  Ms. Bellantoni, is there anything else I

24  can do while we're here today?

25             MS. BELLANTONI:  No, thank you, Your Honor.

18

**Richey v. Sullivan et al. - 23-CV-344**

1           THE COURT:  All right.  Mark, on behalf of the
2  defendants, is there anything further you want me to do?
3           MR. MITCHELL:  There's nothing further, Your Honor.
4  Thank you.
5           THE COURT:  All right.  Shannan, when is the going
6  away party?
7           MS. KRASNOKUTSKI:  I don't know if there's a party,
8  Your Honor.  I'm just an Irish farewell or whatever.
9           THE COURT:  That's sneaking out the back while nobody
10 is looking.  That's a good way to go.  I'm totally appreciative
11 of that.
12          Okay.  Thanks, everybody.
13                    (The matter adjourned at 11:26 a.m.)

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**Richey v. Sullivan et al. - 23-CV-344**

1  CERTIFICATION OF OFFICIAL REPORTER

2

3

4  I, JACQUELINE STROFFOLINO, RPR, CRR, Official Court

5  Reporter, in and for the United States District Court for the

6  Northern District of New York, do hereby certify that pursuant

7  to Section 753, Title 28, United States Code, that the foregoing

8  is a true and correct transcript of the stenographically

9  reported proceedings held in the above-entitled matter and that

10  the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12

13  Dated this 16th day of February, 2024.

14

15  **/s/ JACQUELINE STROFFOLINO**

16  JACQUELINE STROFFOLINO, RPR, CRR

17  FEDERAL OFFICIAL COURT REPORTER

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*