UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ISAAC RICHEY,

                              Plaintiff,

          v.                                             1:23-CV-0344
                                                                (AMN/DJS)

ANN MARIE T. SULLIVAN, MD, *et al.*,

                              Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

THE BELLANTONI LAW FIRM LLC         AMY L. BELLANTONI, ESQ.
Attorney for Plaintiff
2 Overhill Road, Suite 400
Scarsdale, NY 10583

NEW YORK STATE ATTORNEY GENERAL   MARK G. MITCHELL, ESQ.
Attorneys for Defendants                         Assistant Attorney General
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

### I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On March 17, 2023, Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983, seeking compensatory, injunctive, and declaratory relief. Dkt. No. 1, "Compl." According to the Complaint, in January 2019, the Plaintiff was on active military duty with the United States military when he experienced mental health issues. Compl. at ¶¶ 66, 67. He requested to be taken to Samaritan Hospital, where he was admitted on January 28, 2019, and remained until he was discharged on February 5, 2019. *Id.* at ¶ 70. He then returned to his infantry unit at Fort Drum

and was ultimately honorably discharged from the United States Army on April 15, 2020. *Id*. at ¶¶ 77-78.

In 2022, Plaintiff attempted to purchase a firearm through a federal firearm licensed dealer and was subject to a background check through the NICS system.[1] Compl. at ¶¶ 81-82. He was denied authorization to purchase the weapon. *Id.* at ¶ 83. Plaintiff was later advised by the FBI that the denial was based on the fact that he had been "adjudicated as a mental defective or who has been committed to a mental institution" within the meaning of 18 U.S.C. §922(g)(4). *Id*. Plaintiff's position is that his stay at Samaritan Hospital was a result of a *voluntary admission*, and not an involuntary one and this event should not have been reported to federal authorities and it provided no basis for denial of his right to purchase a weapon. *Id.* at ¶¶ 19-39. Plaintiff then sought to remove himself from the SAFE Act database, and in that regard sought a certificate of relief from civil disabilities directly from the SAFE Act Office in Albany New York. *Id.* at ¶¶ 87-88. The Panel Members of the Safe Act Office were named as "Doe" Defendants in the original Complaint. *Id.* at ¶ 9. On or about July 28, 2022, certain "Doe" Defendants denied Plaintiff's application for certificate of relief and have allegedly refused to remove Plaintiff's records and identifying information from the State database, all in violation of the Plaintiff's federally protected Second Amendment Rights. *Id.* at ¶¶ 92-106.

The Complaint seeks a declaration that being subject to a "emergency evaluation and observation" under New York State's Mental Health Law §9.39 does not result in the termination of an individual's Second Amendment rights, and that the Defendants' policies and procedures in reporting such information violate the Second and Fourth Amendments, as well as the right to

---

[1] The Brady Handgun Violence Prevention Act of 1993 established the National Instant Criminal Background Check System (NICS). The Office of NICS Appeals and SAFE Act was established to comply with Federal Law which required that New York State establish a "certificate of relief from disabilities" process to permit a person who has been disqualified from possessing a firearm to petition for relief from that civil rights disability.

due process under the Fourth and Fourteenth Amendments. Compl. at ¶¶ 107-113. Further, the Complaint seeks a declaration that Mental Health Law §7.09(j)(1) is unconstitutionally overbroad.

Next, the Complaint seeks injunctive relief permanently enjoining Defendants' inclusion and maintenance of Plaintiff's records information on the State database, or reporting to NICS and any other database information concerning Plaintiff that identifies him as a person prohibited from possessing, purchasing, transferring, or receiving firearms in connection with his 2019 admission to Samaritan Hospital. Compl at ¶¶ 114-117, & Wherefore Clause. Finally, the Complaint seeks compensatory damages under 42 U.S.C. § 1983 for alleged violations of Plaintiff's Second and Fourteenth Amendment rights to possess a firearm (Claim #1); for Defendants' failure to properly train and supervise its staff (Claim #2); and for both a pre-deprivation and post-deprivation due process violation (Claims ## 3 & 4). *Id.* at ¶¶ 118-125.

After the Complaint was filed, the named Defendants answered. Dkt. No. 9. No motion to dismiss was made at that time. Counsel submitted a proposed Civil Case Management Plan, and the Court issued a Uniform Pretrial Scheduling Order on July 13, 2023. Dkt. No. 14. Relevant to the present Motion, the UPSO called for any amendment of pleadings or joinder of parties to occur by September 29, 2023. *Id*.

The parties then engaged in discovery. Part of that process involved Plaintiff's attempt to learn from Defendants the identity of the individuals who processed, reviewed, and made the final determination on Plaintiff's application for a certificate of relief of civil disabilities. Dkt. No. 16. Defendants provided some information, but redacted the names of the Panel Members, out of a concern for the Panel Members safety. *Id*.; Dkt. No. 25 at p. 3; Dkt. No. 31-4, Request 20.

The parties requested a conference with the Court to consider this issue, as well as other discovery difficulties. That conference was held on February 16, 2024. During the conference, the Assistant Attorney General who was then representing Defendants explained that the State did have a legitimate concern regarding the release of the Panel Members' names, but noted that Defendants have since learned that Plaintiff's counsel recently filed a complaint in the Western District of New York, which in fact named two of the Panel Members. Dkt No. 25, Transcript of 2/16/2024 Discovery Conference, at p. 4. Because the identity of certain Panel Members was now publicly available, defense counsel asked for more time to reconsider their position. *Id.* The Court directed Plaintiff's counsel to prepare a proposed amended complaint and provide it to defense counsel to see if they would consent to its filing. *Id*. at pp. 8-10. That Amended Complaint was in fact prepared and exchanged with defense counsel. However, on March 14, 2024, the AAG who is now on the case, Mark Mitchell, advised the Court that his clients would oppose the filing of the Amended Complaint. *See* Text Minute Entry dated March 14, 2024. Plaintiff's counsel was then given permission to file a motion to amend, which was done on March 27, 2024. Dkt. No. 31. Defendants filed their opposition papers to the Motion, and the Court then stayed discovery pending a resolution of the request to amend. Dkt. Nos. 33 & 36.

## II.   DISCUSSION

Federal Rule of Civil Procedure 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue

prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Id.*; *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).

In the present case, the Proposed Amended Complaint adds no new claims and seeks to merely identify three of the members of the Panel of the New York State Office of NICS Appeals and SAFE Act who allegedly denied Plaintiff's application for a Certificate of Relief and would not remove Plaintiff's records and identifying information from the State database. Dkt. No. 31-6, Proposed Amended Complaint ("PAC"), at ¶¶ 9-16. It also removes any claim by Plaintiff for any more than garden-variety emotional damages, an amendment not objected to by defense counsel. *Id.* at Wherefore Clause.

While the present Motion to Amend was not made within the period set forth in the UPSO, the parties have explained why the identity of the Panel Members was initially withheld. Certainly, Plaintiff's counsel cannot be faulted for not discovering their identities sooner, as it was the Defendants who prevented her from doing so. Based upon that, the Court granted Plaintiff's counsel additional time to file the present Motion. Nor does the Court perceive any substantial prejudice in allowing the Motion to Amend at this time. As noted above, no new claims are added, only previously unknown parties are identified, and the measure of damages are in fact limited. Further, the case presents primarily legal issues, and any delay associated with the amendment should not substantially affect the time necessary to resolve the case, especially as Defendant now has new counsel who had understandably requested time to come up to speed on the case.

Defendants' primary objection to the proposed Amended Complaint is based upon a claim of futility. *See* Dkt. No. 33-1. A proposed amendment is futile if the proposed claim could

not withstand a FED. R. CIV. P. 12(b)(6) motion to dismiss. *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "The party opposing the motion to amend bears the burden of establishing that an amendment would be prejudicial or futile." *Speedfit LLC v. Woodway USA, Inc.,* 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015) (citation omitted).  In this regard, defense counsel raises several significant legal issues affecting all of the named Defendants, including issues of qualified immunity; quasi-judicial immunity; timeliness; and an alleged failure to utilize available state procedures.  *See generally* Dkt. No. 33-1.

While ultimately not deciding the merits of Defendants' arguments, the procedural posture of this case makes them less compelling in opposing the present Motion to Amend. The claim of futility was raised in Defendants' opposition papers and, pursuant to the Local Rules, Plaintiff is not allowed to file responsive papers absent specific court authorization.  L.R. 7.1(a)(2).  Accordingly, Defendants' substantive and complex arguments concerning the nature of the Plaintiff's claim, how the applicable federal and state statutes should be construed, the role of the Panel in the process, and the entitlement to some level of immunity, are presented to the Court without the benefit of opposition papers.

Rule 1 requires that the Federal Rules of Civil Procedure be construed and applied in a manner that is the most cost-efficient and fair.  As this Court has previously opined: "It is a far better conservation of judicial and party resources to permit the amendment, declare the [ ] Amended Complaint as the operative complaint, and then let any order on a motion to dismiss determine the facial validity of the [ ] claim[s]." *Livingston v. Trustco Bank*, 2021 WL 6199655, at *2 (N.D.N.Y. Apr. 23, 2021) (quoting *Liang v. Home Reno Concepts LLC*, 2018 WL 1401801, at *3); *accord Chan v. City of New York*, 2021 WL 6502292, at *5 (E.D.N.Y. Dec. 29, 2021) ("[T]he analysis of the claims raised against the current and the new defendants is not well suited

to resolution on a motion to amend. Because of the more searching briefing, defenses of probable cause and qualified immunity, spread among the different roles among the different defendants, are more readily addressed on a motion to dismiss. Thus, while it is well established that leave to amend a complaint need not be granted when amendment would be futile, [i]n the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss.") (internal quotations and citations omitted).

Because of the unique nature and posture of this case, it is this Court's view that the best approach would be to grant the Motion to Amend, and then permit the Defendants, if they wish, to file a motion to dismiss directly with the District Court Judge. This would allow these complex arguments to be fully briefed and have them presented directly to the Court that will ultimately need to decide the issues. The Court notes that this precise process was already utilized by the Defendants in connection with the matter pending in the Western District of New York, and Plaintiff did file a comprehensive brief in opposition to the Defendants arguments. *Giannavola v. Lee*, *M.D., et al.*, 6:24-cv-06096 (W.D.N.Y.), Dkt. Nos. 7 & 10.

### III. CONCLUSION

**ACCORDINGLY,** for the reasons stated herein, it is hereby

**ORDERED**, that the Motion to Amend is **GRANTED**; and it is further

**ORDERED**, that Plaintiff shall file the Amended Complaint within ten (10) days of the date of this Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the

parties to this action.

Dated: August 16, 2024
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge