UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ISAAC RICHEY,

　　　　　　　　　　　　　　　　*Plaintiff,*

-against-　　　　　　　　　　　　　　　　　　1:23-cv-0344

　　　　　　　　　　　　　　　　　　　　　　AMN/DJS
ANN MARIE T. SULLIVAN, MD, in her Individual and
Official Capacity, NEW YORK STATE OFFICE OF
MENTAL HEALTH, NEW YORK STATE OFFICE OF
NICS APPEALS AND SAFE ACT, LI-WEN GRACE LEE,
M.D., Individually, CARMEN BARBER, Individually,
TONY TRAHAN, Individually, DOES 1-5 in their individual
capacities,

　　　　　　　　　　　　　　　　*Defendants.*

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

　　　　　　　　　　　　　　　LETITIA JAMES
　　　　　　　　　　　　　　　Attorney General of the State of New York
　　　　　　　　　　　　　　　Attorney for Defendants Ann Marie T. Sullivan,
　　　　　　　　　　　　　　　　　MD, in her individual and official
　　　　　　　　　　　　　　　　　capacity; New York State Office of
　　　　　　　　　　　　　　　　　Mental Health; New York State Office
　　　　　　　　　　　　　　　　　of NICS Appeals and SAFE Act; Li-
　　　　　　　　　　　　　　　　　Wen Grace Lee, M.D.; Carmen Barber;
　　　　　　　　　　　　　　　　　and Tony Trahan
　　　　　　　　　　　　　　　The Capitol
　　　　　　　　　　　　　　　Albany, New York  12224-0341

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  518-776-2583
Fax:  518-915-7738 (Not for service of papers)　　　　　　　Date:  October 4, 2024

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 1

ARGUMENT ............................................................................................................... 3

    Standard .................................................................................................................. 3

    Background Regarding the Prohibition on Firearm Possession by Persons
    Involuntarily Committed to Mental Institutions ..................................................... 4

    POINT I: PLAINTIFF'S CLAIMS AGAINST THE NEW YORK STATE
    OFFICE OF MENTAL HEALTH AND THE NEW YORK STATE
    OFFICE OF NICS APPEALS AND SAFE ACT MUST BE DISMISSED
    REGARDLESS OF THE RELIEF SOUGHT ......................................................... 8

    POINT II: THE SECOND AMENDMENT CLAIMS AGAINST
    COMMISSIONER SULLIVAN AND THE PANEL MEMBERS, IN
    THEIR INDIVIDUAL CAPACITIES, SHOULD BE DISMISSED
    BASED ON QUASI-JUDICIAL IMMUNITY AND QUALIFIED
    IMMUNITY ........................................................................................................... 9

        A.    The Commissioner and The Panel Members are Entitled to Quasi-
    Judicial Immunity .................................................................................................. 9

        B.    The Commissioner and The Panel Members are Entitled to
    Qualified Immunity ............................................................................................. 14

    POINT III: PLAINTIFF'S CLAIMS AGAINST THE COMMISSIONER IN HER
    OFFICIAL CAPACITY SHOULD BE DISMISSED ......................................... 17

    POINT IV: PLAINTIFF'S FOURTH AMENDMENT CLAIM SHOULD BE
    DISMISSED FOR FAILURE TO STATE A CLAIM ....................................... 19

    POINT V: PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED
    FOR FAILURE TO STATE A CLAIM AND AS UNTIMELY ......................... 20

    POINT VI: THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
    PREJUDICE ......................................................................................................... 22

CONCLUSION ......................................................................................................... 23

## PRELIMINARY STATEMENT

In this action, Plaintiff Isaac Richey, who was involuntarily admitted to a hospital for mental health treatment in 2019, asserts Second Amendment, Fourth Amendment, and due process claims challenging the denial of his application for a certificate or relief from disabilities related to firearm possession. Defendants Ann Marie T. Sullivan, M.D., the New York State Office of Mental Health, the New York State Office of NICS Appeals and SAFE Act, Li-Wen Grace Lee, M.D., Carmen Barber, and Tony Trahan now move to dismiss the Amended Complaint with prejudice and to terminate each of them as defendants in this action. First, all claims against Defendants the New York State Office of Mental Health and the New York State Office of NICS Appeals and SAFE Act should be dismissed based on Eleventh Amendment immunity. Second, Plaintiff's claims against Commissioner Ann Marie T. Sullivan, M.D., Li-Wen Grace Lee, M.D., Carmen Barber, and Tony Trahan, in their individual capacities, should be dismissed based on quasi-judicial immunity and qualified immunity. Third, Plaintiff's claims against Commissioner Sullivan in her official capacity should be dismissed based on quasi-judicial immunity and lack of authority to grant the relief Plaintiff seeks. Fourth, Plaintiff's Fourth Amendment claim fails to state a claim because Plaintiff has not alleged Defendants' involvement in any unreasonable search or seizure. Fifth, Plaintiff's due process claims fail to state a claim because Plaintiff had entirely adequate remedies available to him, and because any such claim accrued outside the three-year Section 1983 limitations period. Finally, inasmuch as an opportunity for further repleading would be futile, the Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On January 28, 2019, Plaintiff was involuntarily admitted to Samaritan Medical Center, pursuant to N.Y. Mental Hygiene Law § 9.39 (emergency admission), after he expressed suicidal ideation in the context of worsening depression. *See* Determination on Plaintiff's application for

a certificate of relief from disabilities, dated July 28, 2022 at p. 2; Amended Complaint, ECF No. 39 ¶¶ 83-86.  Plaintiff was diagnosed with recurrent major depressive disorder, among other conditions; he also was prescribed medications and he participated in treatment.  *See id*.  Plaintiff was discharged on February 5, 2019, with follow-up treatment scheduled.  *See id*.

In November 2021, Plaintiff applied to the Office of NICS Appeals and SAFE Act seeking a certificate of relief from disabilities related to firearm possession.  *See* Determination dated July 28, 2022 at p. 1; Amended Complaint ¶¶ 103-104.  By a written determination dated July 28, 2022, the Office of NICS Appeals and SAFE Act advised that, on the basis of a thorough review and analysis of the materials submitted and a subsequent investigation, Plaintiff's application was denied.  *See* Determination dated July 28, 2022 at p. 2; Amended Complaint ¶ 108.  The July 28, 2022 written determination shows that the Panel Members thoughtfully and carefully reviewed significant evidence including a DCJS fingerprint response summary, medical records from four healthcare providers, and six letters of reference.  Although Plaintiff could have commenced a CPLR Article 78 proceeding in state court to review the July 2022 determination, Plaintiff did not do so.

In the Amended Complaint, Plaintiff alleges that on an unspecified date in 2022, he attempted to purchase a firearm.  Amended Complaint ¶ 97.  Plaintiff alleges that his purchase was denied based on a background check through the National Instant Criminal Background Check System ("NICS").  *Id*. ¶¶ 29-30, 98.  Plaintiff alleges that in September 2022, he was advised by the FBI that his firearm purchase was denied based on 18 U.S.C. § 922(g)(4), because he had been committed to a mental institution.  *Id*. ¶ 99.

Plaintiff commenced this action in March 2023.  ECF No. 1.  In March 2024, Plaintiff moved for leave to file an Amended Complaint adding claims and allegations against three new

defendants, Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan, each alleged to be a panel member for the "Certificate of Relief From Firearm Disabilities program of the SAFE ACT Office." (The "Panel Members"). ECF No. 31; 39 at pp. 2-3. Defendants Ann Marie T. Sullivan, MD, the New York State Office of Mental Health, and the New York State Office of NICS Appeals and SAFE Act opposed Plaintiff's motion to amend, arguing that Plaintiff's proposed amendments could not survive a motion to dismiss and thus were futile. ECF Nos. 33, 34.

By its Decision and Order filed on August 16, 2024, the Court granted Plaintiff's motion to amend. ECF No. 37 at p. 7. The Court explained: "Because of the unique nature and posture of this case, it is this Court's view that the best approach would be to grant the Motion to Amend, and then permit the Defendants, if they wish, to file a motion to dismiss directly with the District Court Judge. This would allow these complex arguments to be fully briefed and have them presented directly to the Court that will ultimately need to decide the issues." *Id.*

Defendants Ann Marie T. Sullivan, MD, the New York State Office of Mental Health, the New York State Office of NICS Appeals and SAFE Act, Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan now move to dismiss the Amended Complaint with prejudice and to terminate each of them as defendants in this action.

## ARGUMENT

### Standard

Under Rule 12(b)(6), to survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and some alterations omitted).

"In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), federal courts need not accept as true contested jurisdictional allegations." *Sloan v. Truong*, 573 F. Supp. 2d 823, 827 (S.D.N.Y. 2008) (internal quotation marks omitted). "The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity …. It is well-settled that states and their officials acting in their official capacities are not 'persons' under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute." *Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013).

For the reasons set forth below, Plaintiff's claims should be dismissed with prejudice.

### Background Regarding the Prohibition on Firearm Possession by Persons Involuntarily Committed to Mental Institutions

State and federal law provide for a system to ensure both that persons involuntarily committed to mental institutions are kept from possessing firearms, and to ensure that persons who have recovered from the illness that led to their commitment may regain their access. By applying the law and deciding applications from previously committed persons who seek to regain their ability to purchase or possess guns, the Panel Members play a critical adjudicative role in that system.

Under federal law, it is unlawful for any person "who has been committed to a mental institution" to possess, receive, or purchase a firearm. *See* 18 U.S.C. § 922(g)(4). "Committed to a mental institution" is defined as "[a] formal commitment of a person to a mental institution by a

4

court, board, commission, or other lawful authority," which includes "commitment to a mental institution involuntarily," and "commitment for mental defectiveness or mental illness." 27 C.F.R. § 478.11; *see also* 14 N.Y.C.R.R. § 543.4(b). The Amended Complaint does not challenge the constitutionality of these federal provisions, nor has Plaintiff filed a notice of constitutional question under Federal Rule of Civil Procedure 5.1(a)(1)(A).

N.Y. Mental Hygiene Law (MHL) § 9.39 "provides for the temporary involuntary commitment of persons to mental health facilities." *Olivier v. Robert L. Yeager Mental Health Ctr.,* 398 F.3d 183, 188 (2d Cir. 2005). Commitment pursuant to § 9.39 is a formal commitment and therefore serves as a lawful valid basis for denying an individual the right to possess, receive, or purchase a firearm. *See Phelps v. Bosco*, 711 F. App'x 63, 65 (2d Cir. 2018) (summary order). The Seventh Circuit has also analyzed New York law in ruling that a Wisconsin plaintiff's New York "commitment under § 9.39 is involuntary, regardless of the committed person's subjective intent," and that such a commitment lawfully prohibits a patient from subsequently possessing a firearm. *Escamilla v. United States*, 62 F.4th 367, 374-375 (7th Cir. 2023).

The New York Court of Appeals similarly recognized MHL § 9.39 as "an involuntary civil commitment." *See, e.g., Matter of George L.,* 85 N.Y.2d 295, 305 n.3 (1995). Courts throughout New York State have confirmed that MHL § 9.39 commitment is an involuntary commitment for the purposes of firearm dispossession. *See Matter of Colihan v. State of N.Y.,* 211 A.D.3d 1432, 1436 (3d Dep't 2022) ("We reject any claim that petitioner's Mental Hygiene Law § 9.39 admission was not an involuntary commitment within the meaning of federal law"); *Matter of Gardner v. Bassett Med. Ctr.,* 148 A.D.3d 1331, 1334 (3d Dep't 2017); *Tienken v. Benedictine Hosp.*, 110 A.D.3d 1389, 1390 (3d Dep't 2013); *Matter of Rueda v. Charmaine D.,* 76 A.D.3d 443,

445-446 (1st Dep't 2010), *aff'd*, 17 N.Y.3d 522 (2011); *Willoughby v. Mount Sinai Hosp.,* 68 A.D.3d 487, 487-488 (1st Dep't 2009).

To allow 18 U.S.C. § 922(g)(4) to be functional, the Commissioner of Mental Health is required, pursuant to MHL § 7.09(j)(1), in cooperation with other state agencies, to transmit to NICS the names and nonclinical identifying information of individuals who have been involuntarily committed to a hospital pursuant to certain statutory authority, including under MHL § 9.39. The Amended Complaint does not challenge the constitutionality of Plaintiff's involuntary commitment pursuant to MHL § 9.39, nor has Plaintiff brought forth any claim against the hospital for reporting Plaintiff's commitment.

An involuntary commitment pursuant to MHL § 9.39 is not necessarily a permanent bar from possessing or purchasing firearms. An individual who has been involuntarily committed may receive relief from 18 U.S.C. § 922(g)(4)'s prohibition on firearm ownership if a proper federal or state authority has provided them a certificate of relief from disabilities that meets the requirements of the NICS Improvement Amendments Act of 2007, Public Law 110-180. Under New York law, OMH has promulgated regulations establishing a certificate of relief from disabilities process. *See* 14 N.Y.C.R.R. § 543.1(c). Certificates of relief are based upon a determination of whether the person's record and reputation are such that the person will not be likely to act in a manner dangerous to public safety and where granting the relief would not be contrary to the public interest. *See* 14 N.Y.C.R.R. § 543.1(d). 14 N.Y.C.R.R. § 543.5(b)(1) provides that "[t]he Commissioner or his/her designee(s) shall perform an administrative review of the request for relief, which shall consist of a review of all information submitted by the applicant that was required or requested by the Office, in accordance with paragraph (a)(3) of this section. The

6

person(s) who conducts the review will not be the individual(s) who gathered the evidence for the administrative request for relief."

When a decision on a certificate of relief is made, "the Commissioner or his/her designee(s) shall prepare a written determination, which shall include:

(i) a summary of the information utilized in reaching the decision;

(ii) a summary of the applicant's criminal history (if any);

(iii) a summary of the psychiatric evaluation prepared to support the request for relief (if any);

(iv) a summary of the applicant's mental health history;

(v) a summary of the circumstances surrounding the firearms disability imposed by 18 U.S.C. Sections 922 and (g)(4);

(vi) an opinion as to whether or not the applicant's record and reputation are such that the applicant will or will not be likely to act in a manner dangerous to public safety and whether or not the granting of the relief would be contrary to the public interest; and

(vii) a determination as to whether or not the relief is granted."

14 NYCRR § 543.5(c)(1). When a decision is made, OMH provides a copy of the written determination to the applicant without undue delay. *See* 14 N.Y.C.R.R. § 543.5(c)(2). In the event the certificate is denied, applicants are notified of their right to have the decision reviewed and advised that they can apply again one year after the date of the written determination. *See* 14 N.Y.C.R.R. § 543.5(c)(2)(ii). Pursuant to MHL § 7.09(j)(2), "[t]he denial of a petition for relief from disabilities may be reviewed de novo pursuant to the proceedings under article seventy-eight of the civil practice law and rules." *See also Moussa v. Sullivan*, No. 22-CV-3709, 2022 WL 2906177, at *3 (E.D.N.Y. July 22, 2022).

**POINT I**

**PLAINTIFF'S CLAIMS AGAINST THE NEW YORK STATE OFFICE OF MENTAL HEALTH AND THE NEW YORK STATE OFFICE OF NICS APPEALS AND SAFE ACT MUST BE DISMISSED REGARDLESS OF THE RELIEF SOUGHT**

Plaintiff purports to assert claims pursuant to 42 U.S.C. § 1983 against OMH. Amended Complaint ¶ 6. Plaintiff also purports to assert Section 1983 claims against the New York State Office of NICS Appeals and SAFE Act, which Plaintiff characterizes as "a subdivision, department, and/or agency within [OMH]." *Id.* ¶ 7. Those claims must be dismissed because "sovereign immunity bars federal courts from entertaining lawsuits against [state agencies] 'regardless of the nature of the relief sought.'" *Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies." *Roberts v. New York*, 911 F. Supp. 2d 149, 159-160 (N.D.N.Y. 2012). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity …." *Mamot v. Board of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citations omitted).

Thus, all claims against Defendants OMH and the New York State Office of NICS Appeals and SAFE Act should be dismissed for lack of subject matter jurisdiction, and they should be terminated as Defendants in this action. *See Holyoke v. S.S.I.*, No. 6:23-CV-1557, 2024 WL 3298953, at *3 (N.D.N.Y. Apr. 26, 2024) (determining that the Eleventh Amendment prevented the plaintiff from suing OMH and the "ACT Team," which was a team of staff members operating within OMH), *adopted*, 2024 WL 3063679 (N.D.N.Y. June 20, 2024); *Klestinez v. ACT Team*, No. 6:21-CV-696, 2021 WL 4086128, at *3 (N.D.N.Y. Aug. 19, 2021) (determining that the plaintiff's claims against OMH and the ACT Team should be dismissed based on Eleventh Amendment

immunity), *adopted*, 2021 WL 4084270 (N.D.N.Y. Sept. 8, 2021); *Griffith v. Annucci*, No. 9:19-CV-0354, 2019 WL 13373317, at *9 (N.D.N.Y. June 26, 2019) ("Because the OMH is an agency of New York State, it is immune from suit under Section 1983.").

## POINT II

### THE SECOND AMENDMENT CLAIMS AGAINST COMMISSIONER SULLIVAN AND THE PANEL MEMBERS, IN THEIR INDIVIDUAL CAPACITIES, SHOULD BE DISMISSED BASED ON QUASI-JUDICIAL IMMUNITY AND QUALIFIED IMMUNITY

#### A. The Commissioner and The Panel Members are Entitled to Quasi-Judicial Immunity

In the Amended Complaint, Plaintiff alleges that Defendants OMH Commissioner Ann Marie T. Sullivan and the Panel members Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan violated Plaintiff's rights under the Second Amendment by denying Plaintiff's application for a certificate or relief from disabilities. Amended Complaint at pp. 2-4, 23. However, the Commissioner and the Panel Members are protected by absolute quasi-judicial immunity. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (holding that claims against a judge were barred by absolute judicial immunity and therefore properly dismissed pursuant to Rule 12(b)(6)). Accordingly, Plaintiff's claims against those Defendants in their individual capacities should be dismissed.

The Second Circuit has long held that government officials, such as Defendants in this action, who "'perform functions closely associated with the judicial process,' including 'prosecutors, administrative law judges and hearing examiners,' are entitled to absolute immunity for acts taken pursuant to their office." *Finn v. Anderson*, 592 F. App'x 16, 18-19 (2d Cir. 2014) (quoting *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)). Judicial immunity extends to individuals in quasi-judicial roles. *See Roe v. Johnson*, 334 F. Supp. 2d 415, 423 (S.D.N.Y. 2004) (granting

absolute immunity to individual members of Character and Fitness Committee tasked with rendering decisions recommending approval, disapproval, or deferral of admittance to New York State bar).

Quasi-judicial roles include a wide range of positions that perform adjudicative functions, whether or not the role is part of the judiciary or affiliated with a court. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (hearing examiners and administrative law judges); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (parole board officials); *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) (law clerks); *Palmer v. Buscemi*, No. CIV. 05-10094, 2007 WL 2903203, at *5 (E.D. Mich. Sept. 30, 2007) (family court judges and family court referees); *Myer v. Backus*, No. 2:06-CV-229, 2007 WL 2908307, at *5-6 (D. Vt. Oct. 2, 2007) (board of pharmacy members, consisting of licensed pharmacists and members of the public, authorized to issue, renew, or suspend licenses to engage in the practice of pharmacy); *Horwitz v. State Bd. of Med. Examiners of State of Colo*., 822 F.2d 1508, 1515 (10th Cir. 1987) (medical board members serving in adjudicative role).  When governmental officials are tasked with reviewing evidence, weighing public interest, and adjudicating individual rights, in a manner closely associated with judicial or adjudicatory process, they must be granted absolute immunity.[1]

The determination of whether an official is entitled to absolute immunity must be based on a functional approach that looks to the particular acts or responsibilities the individual performs. *See King v. Simpson*, 189 F.3d 284, 287-288 (2d Cir. 1999).  The Amended Complaint alleges that

---

[1] Notably, decisions related to firearm licensing are immune to suit under the doctrine of judicial immunity.  *See Kellogg v. Nichols*, No. 1:23-CV-658, 2023 WL 8046892, at *2-3 (N.D.N.Y. Nov. 21, 2023)*; Trello v. McKeighan,* 624 F. Supp. 3d 150, 155-156 (N.D.N.Y. 2022); *Paulk v. Kearns,* 596 F. Supp. 3d 491, 496-497 (W.D.N.Y. 2022); *Johnson-El v. DeProspo*, No. 1:20-CV-2878, 2020 WL 5350487, at *4-5 (S.D.N.Y. Sept. 3, 2020); *Aron v. Becker*, 48 F. Supp. 3d 347, 365 (N.D.N.Y. 2014) (Under New York State law, the "determination of a pistol permit application … is a function necessarily performed by a judicial officer.").

"the defendant Panel Members reviewed, considered, and made the final determination" to deny Plaintiff's application.   Amended Complaint ¶ 12.   The Amended Complaint alleges that Commissioner Sullivan designated the Panel Members to issue a determination. *Id*. ¶ 11.   The July 28, 2022 written determination shows that the Panel Members thoughtfully and carefully reviewed significant evidence including a DCJS fingerprint response summary, medical records from four healthcare providers, and six letters of reference, and rendered a determination based on that review.   Accordingly, the Panel Members serve the functions of reviewing evidence, applying a legal standard to the facts presented, and adjudicating individual cases.   It is abundantly clear that the Panel Members are charged with the authority of adjudicating final determinations, which is "'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 436 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)).   "[T]he function of resolving disputes between parties, or of authoritatively adjudicating private rights" is entitled to protection by judicial immunity.   *Antoine*, 508 U.S. at 435-436 (citing *Burns v. Reed,* 500 U.S. 478, 500 (1991)).

The Court may also take judicial notice of the regulations which establish the certificate of relief from disabilities process at 14 N.Y.C.R.R. § 543.1 to understand the quasi-judicial role OMH officials play.   *See Dawkins v. Biondi Educational Center*, 164 F. Supp.3d 518, 526 n.2 (S.D.N.Y. 2016).   Regulations require OMH officials to make a determination of whether the person's record and reputation are such that the person will not be likely to act in a manner dangerous to public safety and where granting the relief would not be contrary to the public interest.   *See* 14 N.Y.C.R.R. § 543.1(d).   The policies underlying the grant of absolute judicial immunity—enabling cases to be decided without fear of adverse consequences and baseless suits—are implicated when an official

11

performs a discretionary, adjudicatory function.  *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999).  For this reason, "[a]bsolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official."  *Cleavinger*, 474 U.S. at 201 (internal quotation marks and citation omitted).

OMH has established a process for requesting relief.  *See* 14 N.Y.C.R.R. § 543.5.  Requests for relief must include, among other things, information regarding: the applicant's criminal history, history of domestic violence, immigration status, mental disability and past commitment to a mental institution.  *Id.*  Applicants must also provide psychiatric evaluations, medical records, and may be required to undergo a clinical evaluation and risk assessment.  *Id.*  After review of the application, the Commissioner or the Commissioner's designee(s) prepares a written determination which includes: (i) a summary of the information utilized in reaching the decision; (ii) a summary of the applicant's criminal history (if any); (iii) a summary of the psychiatric evaluation prepared to support the request for relief (if any); (iv) a summary of the applicant's mental health history; (v) a summary of the circumstances surrounding the firearms disability imposed by 18 U.S.C. section 922(d)(4) and (g)(4); (vi) an opinion as to whether or not the applicant's record and reputation are such that the applicant will or will not be likely to act in a manner dangerous to public safety and whether or not the granting of the relief would be contrary to the public interest; and (vii) a determination as to whether or not the relief is granted.  *Id.*  The officials adjudicating certificate of relief from firearm disability applications are unquestionably performing a discretionary, adjudicatory function.

The Supreme Court's recent decision in *Bruen* did not displace the body of law on judicial immunity.  Although *Bruen* abrogated the means-ends constitutional scrutiny previously used to evaluate Second Amendment claims, *see* 597 U.S. at 19 n.4, it did not address judicial immunity

or contradict the bedrock cases establishing "whether a particular proceeding before another tribunal was truly judicial." *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 124 (2d Cir. 2020) (quoting *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 n.13 (1983)); *see also Bruen*, 597 U.S. at 71-72 (Alito, J., concurring).  Federal courts both before and after *Bruen* have consistently held that plaintiffs cannot use a federal § 1983 action to sue a state official whose quasi-judicial licensing decision they disagree with.  *See, e.g., Kellogg*, 2023 WL 8046892, at *2-3; *Trello*, 624 F. Supp. 3d at 155-156; *Paulk*, 596 F. Supp. 3d at 496-497; *see also Aron*, 48 F. Supp. 3d at 365.  This Court should reach the same result in the context of adjudicating certificates for relief from disabilities.

Defendants entitled to quasi-judicial immunity only lose that privilege if they act "in the clear absence of all jurisdiction." *Finn v. Anderson,* 592 F. App'x 16, 19 (2d Cir. 2014).  Plaintiff fails to allege any facts that suggest that the Commissioner or the Panel Members acted in the absence of their jurisdiction.  *See Otrompke v. First Dep't Comm. on Character & Fitness*, No. 22-CV-4676, 2023 WL 7399840, at *8 (S.D.N.Y. Nov. 8, 2023) (dismissing action on judicial immunity grounds for failing to establish defendant's actions occurred in the clear absence of jurisdiction), *adopted as modified*, 2024 WL 1235601 (S.D.N.Y. Mar. 22, 2024).  Rather, Plaintiff concedes that the Commissioner and the Panel Members acted consistently with their obligations under the N.Y. Mental Hygiene Law and New York State regulations.  Amended Complaint ¶¶ 11-12.  As such, Plaintiff's claims against Commissioner Sullivan, Dr. Lee, Barber, and Trahan, in their individual capacities, are barred by quasi-judicial immunity, as all actions taken by them

occurred while performing a quasi-judicial function in adjudicating Plaintiff's application for a certificate of relief from disabilities related to firearm possession.[2]

**B.     The Commissioner and The Panel Members are Entitled to Qualified Immunity**

Alternatively, Plaintiff's claims against the Commissioner and the Panel Members, in their individual capacities, should be dismissed based on qualified immunity.  The doctrine of qualified immunity protects the Defendants in this action "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has made clear that the qualified immunity doctrine was made to ensure that insubstantial claims against government officials are resolved prior to discovery.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.  *Id.*   Qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.  *See Butz v. Economou*, 438 U.S. 478, 507 (1978) (for the proposition that qualified immunity covers an administrative law judge's "mere mistakes in judgment, whether the mistake is one of fact or one of law").

To determine whether Defendants are entitled to qualified immunity, the Court may consider: (1) whether the facts presented "make out a violation of a constitutional right"; and (2) whether the right at issue was "clearly established" when it was allegedly violated.  *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010).  In the instant case, Plaintiff failed to plead facts that satisfy the first or second prongs.  As to the first prong, the Amended Complaint fails to

---

[2] Commissioner Sullivan's entitlement to quasi-judicial immunity is further discussed below in Point III.

articulate how denying a certificate of relief from disabilities based on an individual's prior involuntary commitment violates a clearly established constitutional right. As to the second prong, the Amended Complaint fails to identify any precedent that establishes that Plaintiff has a clearly established right to a certificate of relief from disabilities despite his history of mental illness and prior involuntary commitment pursuant to MHL § 9.39 as required to overcome a state actor's qualified immunity. *See Torcivia v. Suffolk County*, 17 F.4th 342, 367 (2d Cir 2021).

There is absolutely no established United States Supreme Court or Second Circuit law establishing that a denial of a certificate of a relief from disabilities violates the Second Amendment. *Bruen* does not create a clearly established right to a certificate of relief from disabilities, nor did it even touch on the state-federal process for disqualification of persons involuntarily committed to mental health facilities, and the concurrences to *Bruen* emphasized that the Court's previous holdings on the subject of guns and the mentally ill remain good law. *See Heller*, 554 U.S. at 626-627 & n.26; *see also Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("[n]or have we disturbed anything that we said in *Heller* or *McDonald* … about restrictions that may be imposed on the possession or carrying of guns"); *id.* at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (recognizing the constitutionality of "longstanding prohibitions on the possession of firearms by … the mentally ill"). Rather, *Bruen* addressed whether individuals requesting a permit to carry handguns publicly for their self-defense need to show "proper cause" or an atypical need for armed self-defense. *Bruen*, 597 U.S. at 9-11. *Bruen* invalidated New York's "proper cause" requirement; it did not invalidate other concealed-carry eligibility criteria under New York law related to age, moral character, past felony convictions, prior dishonorable discharge, or history of involuntary commitments to a mental hygiene facility. *Bruen*, 597 U.S. at 71, 94. This action does not involve a concealed-carry permit application.

The Supreme Court's earlier decision in *Heller* likewise cannot serve as the basis for establishing Plaintiff's right to a certificate of relief from disabilities. While in that case the Supreme Court of the United States held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" (*Heller,* 554 U.S. at 635), that decision also stated that "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and the Court's "opinion should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by … the mentally ill" (*id*. at 626). The decision goes on to describe laws directed at prohibiting possession by the mentally ill as "presumptively lawful regulatory measures." *Id.* at 627 n.26.

"To determine whether a law is clearly established, this Court considers 'the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Salaam v. Stock*, No. 19-cv-689, 2023 WL 3579770, at *6 (N.D.N.Y. May 22, 2023) (Nardacci, D.J.) (quoting *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what [the official] is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Bacon v. Phelps*, 961 F.3d 533, 545 (2d Cir. 2020) (internal quotation marks and citations omitted). "The Supreme Court repeatedly has instructed that courts must not define clearly established law at 'a high level of generality.'" *Id*. (collecting cases). Instead, "[t]he 'clearly established' standard [] requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before [the officer]." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

Here, the Amended Complaint fails to support a violation of any clearly established right. As such, Plaintiff's claims against the Commissioner and the Panel Members, in their individual capacities, should be dismissed.

## POINT III

### PLAINTIFF'S CLAIMS AGAINST THE COMMISSIONER IN HER OFFICIAL CAPACITY SHOULD BE DISMISSED

Plaintiff's claims against Commissioner Sullivan in her official capacity likewise should be dismissed based on quasi-judicial immunity. Plaintiff's allegations against Commissioner Sullivan in essence challenge the performance of a quasi-judicial function in adjudicating Plaintiff's application for a certificate of relief from disabilities related to firearm possession. *See* Amended Complaint at pp. 18-21. "Judicial and quasi-judicial immunity are both absolute immunities." *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009). Accordingly, such immunity bars Plaintiff's claims seeking prospective injunctive and declaratory relief against the Commissioner in her official capacity. *See Irazu v. Sainz De Aja*, No. 23-702-CV, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023).

In addition, "[i]n order to survive a motion to dismiss requests for injunctive relief, a plaintiff must allege that the state official has the authority to grant the injunctive relief sought." *Babyrev v. Lanotte*, No. 16-CV-5421, 2018 WL 388850, at *5 (S.D.N.Y. Jan. 11, 2018). Plaintiff apparently demands injunctive relief against Commissioner Sullivan that would, among other things, prevent the Commissioner and OMH from complying with federal and state reporting requirements to the NICS. Amended Complaint at pp. 24-25; *see* 18 U.S.C. § 922(g)(4); 27 C.F.R. § 478.11; N.Y. MHL § 7.09(j)(1); 14 N.Y.C.R.R. § 543.4(b). However, the Amended Complaint does not challenge the constitutionality of those federal provisions, nor has Plaintiff filed a notice of constitutional question under Federal Rule of Civil Procedure 5.1(a)(1)(A).

Further, as set forth above, the case law demonstrates that a commitment pursuant to MHL § 9.39 constitutes an involuntary commitment within the meaning of federal law. *See, e.g.*, *Escamilla*, 62 F.4th at 374-375; *Phelps*, 711 F. App'x at 65; *Olivier*, 398 F.3d at 188; *Matter of George L.*, 85 N.Y.2d at 305 n.3; *Matter of Colihan*, 211 A.D.3d at 1436-1437. Moreover, MHL § 9.39 is not unconstitutionally vague. *See Rueda v. Charmaine D.*, 17 N.Y.3d 522, 529 (2011) (characterizing Section 9.39 as "precisely, and stringently, defined"); *Haverstraw Town Police v. C.G.*, 79 Misc. 3d 1005, 1013 (N.Y. Sup. Ct., Ulster County 2023) (observing that "New York's involuntary commitment statute has been on the books for more than 30 years. Respondent has failed to identify any case suggesting that this provision of the Mental Hygiene Law is void for vagueness."); *see, generally, Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir. 1995) (observing that "New York's overall statutory scheme governing involuntary commitments has been held facially sufficient to meet the requirements of due process.)"[3] The Amended Complaint does not challenge the constitutionality of Plaintiff's involuntary commitment pursuant to MHL § 9.39, nor has Plaintiff brought forth any claim against the hospital for reporting Plaintiff's commitment. Accordingly, in addition to being barred by quasi-judicial immunity, Plaintiff's claims against the Commissioner must be dismissed because the Commissioner lacks the authority to grant the relief requested by Plaintiff.

Finally, to the extent that Plaintiff seeks money damages, or retrospective injunctive or declaratory relief, against Commissioner Sullivan in her official capacity, those claims are barred

---

[3] Plaintiff also claims that MHL § 7.09(j)(1) is "overbroad" in that it directs the Commissioner, in cooperation with other state agencies, to transmit to NICS the names and nonclinical identifying information of individuals who have been involuntarily committed to a hospital pursuant to certain statutory authority, including under MHL § 9.39. Amended Complaint at pp. 14-15. Plaintiff offers no allegations in support of that claim apart from Plaintiff's view—which was rejected in the federal and state decisions cited above—that a commitment pursuant to MHL § 9.39 is not an involuntary commitment.

by Eleventh Amendment immunity. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *New York State Ct. Clerks Assn. v. Unified Ct. Sys. of the State of New York*, 25 F. Supp. 3d 459, 468 (S.D.N.Y. 2014) (observing that "the Eleventh Amendment bars retrospective declaratory relief against state officials"); *Brown*, 975 F. Supp. 2d at 222 (determining that "Eleventh Amendment immunity extends to state officials sued in their official capacities for retrospective relief."). In sum, Plaintiff's claims against Commissioner Sullivan in her official capacity should be dismissed.

## POINT IV

### PLAINTIFF'S FOURTH AMENDMENT CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In the Second Cause of Action, Plaintiff alleges that the Defendants violated Plaintiff's "Fourth Amendment rights for failing to train, supervise, monitor, and discipline." Amended Complaint ¶¶ 135-136. Plaintiff's Second Cause of Action fails to state a claim upon which relief can be granted.

As set forth above, under Fed. R. Civ. P. Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman*, 464 F.3d at 337 (internal quotation marks and alterations omitted). A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation marks omitted).

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *Spinelli v. City of New York*, 579 F.3d 160, 167 (2d Cir. 2009) (quoting U.S. Const. amend. IV). However, the Amended Complaint is devoid of any factual allegations supporting a plausible Fourth Amendment claim against the Defendants. Plaintiff fails to set forth any facts plausibly suggesting

that any Defendant carried out a search or seizure against Plaintiff. Further Plaintiff does not allege that any Defendant was responsible for Plaintiff's original involuntary commitment to the hospital. Moreover, there is no seizure of a person or property involved in the denial of a certificate of relief from disabilities.

Accordingly, the Second Cause of Action should be dismissed for failure to state a claim. *See Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020) (observing that the plaintiff had to establish that the defendant violated the plaintiff's federal rights "by [her] own conduct, not by reason of [her] supervision of others"); *Banks v. Annucci*, 48 F. Supp. 3d 394, 418-420 (N.D.N.Y. 2014) (dismissing claim against superintendent alleging that he failed to properly select, hire, and train staff members).

## POINT V

### PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AND AS UNTIMELY

Plaintiff's Third and Fourth Causes of Action, which allege due process violations, fail to state a claim upon which relief can be granted. Amended Complaint at pp. 23-24. The issue of whether or not Plaintiff was improperly categorized as a prohibited firearms purchaser can be remedied in a properly pled Article 78 proceeding. *See* MHL § 7.09(j)(2) ("The denial of a petition for relief from disabilities may be reviewed de novo pursuant to the proceedings under article seventy-eight of the civil practice law and rules."); 14 N.Y.C.R.R. § 543.5(2)-(6); *O'Brien v. Yugartis*, 54 F. Supp. 3d 186, 193 (N.D.N.Y. 2014). As such, Plaintiff's allegations fail to state a due process claim, because his right to a post-certificate of relief denial proceeding under Article 78 is "a wholly adequate post-deprivation hearing for due process purposes." *Leary v. Civil Serv. Empls. Ass'n Region 3*, 516 F. App'x. 42, 43 (2d Cir. 2013) (quoting *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001)).

Contrary to Plaintiff's view, he cannot manufacture a due process claim by failing to use the state procedures that were available to him. *See Trello v. McKeighan*, 624 F. Supp. 3d 150, 159 (N.D.N.Y. 2022) (observing that "Plaintiffs cannot now allege a deprivation of their procedural due process rights when they did not utilize the due process procedures that were afforded to them"). It is well settled law in this Circuit that an Article 78 proceeding provides the proper post-deprivation process, even in situations where the plaintiff fails to pursue it. *See Houston v. Nassau Cnty. Police Dep't*, No. 20-CV-5253, 2020 WL 7643132, at *3 (E.D.N.Y. Dec. 23, 2020) (holding that where an individual's request for a certificate of relief from disabilities is denied, the individual "may seek review in state court pursuant to Article 78 of the [CPLR, which] provides the requisite post-deprivation process—even if a plaintiff failed to pursue it" (internal quotation marks omitted)); *Montalbano v. Port Auth. of New York & New Jersey*, 843 F. Supp. 2d 473, 485 (S.D.N.Y. 2012); *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011); *Johnson-El ex rel. Johnson v. DeProspo*, No. 19-CV-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) ("Courts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses."). Nothing prohibited Plaintiff from seeking to properly remedy his claims pursuant to an Article 78 proceeding. *See Kern v. Joyce*, 857 F. App'x 691, 693 (2d Cir. 2021) (where court found that constitutional claims were cognizable in an Article 78 proceeding); *Locurto*, 264 F.3d at 174 ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."); *see also Pascazi v. Rivera*, No. 13-CV-9029, 2015 WL 5783944, at *1 (S.D.N.Y. Oct. 1, 2015).

Any challenge related to the Certificate of Relief from Disabilities process on due process grounds must also fail on the merits, because District Courts in New York have routinely held that the process, including Article 78 review, satisfies the Due Process clause. *See Moussa v. Sullivan*, No. 22-CV-3709, 2022 WL 2906177, at *3 (E.D.N.Y. July 22, 2022).

Moreover, Plaintiff's claims alleging that the Defendants failed to provide Plaintiff with an opportunity to be heard are untimely. Amended Complaint at pp. 4, 19-20. "In New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023). The instant case was filed on March 17, 2023. ECF No. 1. Plaintiff concedes that he was admitted to Samaritan Hospital on January 28, 2019, and discharged on February 5, 2019. Amended Complaint ¶¶ 83-86. Events occurring in January and February 2019 fall well beyond the statute of limitations for a § 1983 claim. In sum, Plaintiff's due process claims should be dismissed.

## POINT VI

### THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Where, as here, the problems with the plaintiff's causes of action are substantive, repleading would be futile and should be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Inasmuch as Plaintiff's claims in this action suffer from fatal substantive defects, an opportunity for repleading would be futile and this action should be dismissed without further leave to amend. *See Ajamian v. New York*, No. 13-CV-1316, 2014 WL 3928448, at *7 (N.D.N.Y. Aug. 11, 2014) (dismissing the plaintiff's claims with prejudice). Further, Plaintiff has already amended the Complaint once, and "Defendants are generally not required to defend against a 'moving target'" of ever-shifting theories of liability. *Vasquez v. Reilly*, No. 15-CV-9528, 2017

WL 946306, at *12 (S.D.N.Y. Mar. 9, 2017).  Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice and without leave to amend.

## CONCLUSION

For the reasons set forth above, the motion to dismiss of Defendants Ann Marie T. Sullivan, MD, the New York State Office of Mental Health, the New York State Office of NICS Appeals and SAFE Act, Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan should be granted, the Amended Complaint should be dismissed with prejudice, and they should be terminated as Defendants in this action.

Dated: Albany, New York
      October 4, 2024

> LETITIA JAMES
> Attorney General of the State of New York
> Attorney for Defendants Ann Marie T. Sullivan,
>     MD, in her individual and official
>     capacity; New York State Office of
>     Mental Health; New York State Office
>     of NICS Appeals and SAFE Act; Li-
>     Wen Grace Lee, M.D.; Carmen Barber;
>     and Tony Trahan
> The Capitol
> Albany, New York  12224-0341
>
> By: *Mark G. Mitchell*
> Mark G. Mitchell
> Assistant Attorney General, of Counsel
> Bar Roll No. 516818
> Telephone:  518-776-2583
> Fax:  518-915-7738 (Not for service of papers)
> Email: mark.mitchell@ag.ny.gov

To:    The Bellantoni Law Firm, PLLC
      Attorneys for Plaintiff
      Amy L. Bellantoni, Esq.
      2 Overhill Road, Suite 400
      Scarsdale, New York  10583