**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ISAAC RICHEY,

                Plaintiff,

        -v-                                            1:23-CV-344 (AJB/DJS)

ANN MARIE T. SULLIVAN, MD,
in her Official Capacity,

                Defendant.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

## ORDER DENYING RECONSIDERATION

**I.    INTRODUCTION**

On March 17, 2023, plaintiff Isaac Richey filed this 42 U.S.C. § 1983 action against defendants New York State Office of Mental Health ("OMH"), New York State Office of NICS Appeals and SAFE Act (the "NICS Appeals Office"), OMH Commissioner Ann Marie T. Sullivan, M.D. ("Commissioner Sullivan"), and Does 1–10. Dkt. No. 1. Broadly speaking, Richey's complaint alleged that defendants unlawfully applied certain provisions of the New York Mental Hygiene Law to permanently disarm him, in violation of his constitutional rights under the Second, Fourth, and Fourteenth Amendments. *See* Dkt. No. 1. The case was initially assigned to U.S. District Judge Anne M. Nardacci.

Richey subsequently amended his complaint to identify as defendants NICS Appeals Office Panel Members Li-Wen Grace Lee, M.D., Carmen Barber, Tony Trahan, Does 1–3 ("Panel Member defendants"), and Does 4–5. Dkt. No. 39. Defendants moved to dismiss the amended complaint in its entirety. Dkt. No. 45. After the matter was fully briefed, Dkt. Nos. 50, 51, the case was reassigned to this Court for all further proceedings, Dkt. No. 52.

On July 3, 2025, this Court granted defendants' motion to dismiss the amended complaint in substantial part, and Richey's surviving claims can be characterized broadly as Second Amendment claims stemming from the maintenance of his information in the National Instant Criminal Background Check System database (the "NICS database"), which precludes him from obtaining a firearm. *Richey v. Sullivan*, 2025 WL 1836492, at *21 (N.D.N.Y. July 3, 2025). These claims proceed solely against Commissioner Sullivan, in her official capacity, pursuant to the *Ex parte Young* doctrine. *Id.* at *5.

On July 17, 2025, Richey moved for partial reconsideration pursuant to Federal Rule of Civil Procedure 54 and Local Rule 60.1. Dkt. No. 56. Specifically, Richey seeks to reinstate: (1) his Fourteenth Amendment post-deprivation due process claim; and (2) certain claims against the Panel Member defendants. *Id*. Defendants oppose reconsideration. Dkt. No. 56.

The motion will be considered on the basis of the submissions without oral argument.

## II.   BACKGROUND

The Court incorporates the extensive statutory and factual background from its July 3, 2025, decision and order (the "July 3 Order") by reference. Dkt. No. 53 at 2–7.

## III.   LEGAL STANDARD

Under this District's Local Rules, "a party may file and serve a motion for reconsideration or reargument no later than fourteen days after the entry of the challenged . . . order." N.D.N.Y. L.R. 60.1. Similarly, "Rule 54(b) [of the Federal Rules of Civil Procedure] provides, in relevant part, that, prior to entry of a final judgment, an interlocutory 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" *Off. Comm. of Unsecured Creditors*

*of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Fed. R. Civ. P. 54(b)).

However, the availability of reconsideration under Rule 54(b) is limited, and "gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Off. Comm. of Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964)).

In other words, "the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters . . . that might reasonably be expected to alter the conclusion reached by the court.'" *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)), *cert. denied*, 145 S. Ct. 279 (2024).

### IV.   DISCUSSION

Richey seeks reconsideration of two portions of the Court's July 3 Order. Dkt. No. 54 ("Pl.'s Mem."). First, Richey argues that the Court erroneously dismissed his post-deprivation procedural due process claim, because he plausibly alleged that he was entitled to notice of his inclusion in the NICS database following his temporary admission to Samaritan Medical Center ("Samaritan") for emergency mental health treatment in 2019. Pl.'s Mem. at 6–8. Second, he claims that the Court prematurely dismissed the Panel Member defendants on quasi-judicial immunity grounds. Pl.'s Mem. at 9–10.

### A. Post-Deprivation Procedural Due Process Claim

First, Richey challenges the July 3 Order's dismissal of his Fourteenth Amendment claim for the alleged violation of his post-deprivation procedural due process rights. Pl.'s Mem. at 6–8. He argues that, "[w]ithout providing notice (i) that his Second Amendment rights have been permanently terminated and (ii) the availability of a process for restoring such rights, the *Mathews* factors are basically meaningless." *Id.* at 6. In response, defendants maintain that plaintiff "does nothing more than repeat the same arguments that he made in opposition to . . . [d]efendants' motion to dismiss." Dkt. No. 56 ("Defs.' Opp.") at 6.

In the July 3 Order, the Court determined that a straightforward application of the *Mathews* factors established that Richey had failed to plausibly allege this claim, *Richey*, 2025 WL 1836492, at *9–*11, and, ultimately, Richey has not demonstrated that reconsideration is warranted.

First, as defendants point out, he fails to "identify an intervening change in controlling law, the availability of new evidence not previously available, or a clear error of law or manifest injustice that would justify reconsideration" of the Court's July 3 Order. Defs.' Opp. at 5. Second, even assuming that some measure of reconsideration was otherwise warranted, the bottom-line conclusion of the July 3 Order would remain unchanged: plaintiff's due process claim must be dismissed, because he has not alleged plausible facts that, taken as true, could amount to a violation of his post-deprivation due process rights.

**1. Plaintiff cites no authority for the proposition that he was entitled to additional notice of the implications of his emergency mental health admission pursuant to MHL § 9.39.**

Richey argues that the Court erroneously "attributed no importance to the absence of the 'notice' required by the Fourteenth Amendment." Pl.'s Mem. at 6. This argument is meritless.

The issue of notice—when it was required, to whom it should be issued, etc.—was central to the Court's analysis in the July 3 Order.  Although Richey believes that he was entitled to something more, it was his burden to plausibly allege a due process claim on that basis, and he has failed to do so.

Plaintiff's amended complaint alleges that he was admitted to Samaritan under New York Mental Hygiene Law ("MHL") § 9.39 on January 28, 2019.  Am. Compl. ¶¶ 83–86.  He alleges that he remained at Samaritan, pursuant to MHL § 9.39, for nine days.  *Id.*  A person admitted to a hospital under MHL § 9.39 and retained beyond forty-eight hours, such as Richey, was necessarily found by two physicians, including a psychiatrist, to pose (1) a "substantial risk of physical harm to himself," or (2) "a substantial risk of physical harm to other persons . . . "  N.Y. Mental Hyg. Law § 9.39 (a)(1)-(2).  The provisions of MHL § 9.39 further require that "[s]uch person . . . be served, at the time of admission, with written notice of their status and rights as a patient under [MHL § 9.39]."  N.Y. Mental Hyg. Law § 9.39.

Richey does not dispute the lawfulness of his admission to Samaritan under MHL § 9.39, nor does he allege any errors in the admission procedures.  *See generally* Am. Compl.  He argues, instead, that he was entitled some additional notice, at some point after his admission, informing him that his MHL § 9.39 admission would prompt his inclusion in the NICS database as a person prohibited from owning or purchasing a firearm under federal and state law.  Pl.'s Mem. at 6–7. Rather than identify any controlling authority in support of this proposition, Richey posits that he was entitled to at least the same process as a person deprived of their driver's license.  Pl.'s Opp. at 7.  The Court disagrees.

The Second Circuit has acknowledged that the government must provide written notice of a decision to suspend a person's driver's license, *McGuire v. City of New York*, 142 F. App'x 1,

3–4 (2d Cir. 2005) (summary order) (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)), but the facts alleged here are distinguishable: Richey is not challenging the suspension of a firearms license, nor does he allege that any individualized determination to revoke his right to possess a firearm occurred.

Instead, Richey claims that defendants determined that he posed a substantial risk of harm to himself or others, warranting emergency admission to Samaritan under MHL § 9.39, Am. Compl. ¶¶ 48, 85, and that this medical determination collaterally triggered Richey's classification as a person "involuntarily committed to a mental institution"—a legal status which prohibits him from possessing a firearm under 18 U.S.C. § 922(g) and N.Y. Penal Law § 400.00 (j).

Because Richey was included in the NICS database pursuant to a categorical criminal prohibition, rather than an individualized determination of dangerousness, "[h]e is . . . not entitled to the process that he seeks." *Zherka v. Bondi*, 140 F.4th 68, 96 (2d Cir. 2025) (holding plaintiff did not have a procedural right to more process where he was disarmed by a categorical criminal prohibition).

Indeed, other circuit courts have explicitly rejected the argument that the government must notify persons prohibited from possessing a firearm under 18 U.S.C. § 922(g) when they become "prohibited persons." *See Doe I v. Gov. of Pa..*, 977 F.3d 270 (3d Cir. 2020) (finding that plaintiffs who had been temporarily admitted to hospital for emergency mental health treatment could challenge the procedural sufficiency of the admission process itself, but not their incidental classification as "prohibited persons"); *United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir. 2000) (holding due process rights not violated where criminal defendant was not notified that his misdemeanor conviction for domestic violence prohibited him from owning a

firearm under §922(g)); *U.S. v. Kafka*, 222 F.3d 1129, 1129 (9th Cir. 2000) ("[D]ue process . . . does not require notice to be given to persons subject to state domestic violence restraining orders that they are prohibited from possessing firearms under federal law."). As the Sixth Circuit put it:

> The fact that [plaintiff]'s status makes him criminally liable for possessing a firearm does not imbue the process by which he attained that status with constitutional significance. Indeed, a legally-relevant status under § 922(g) may arise in the absence of any formal proceeding. For example, § 922(g)(3) prohibits an individual addicted to controlled substances from possessing a firearm, yet an individual attains the status of a drug addict without a court proceeding of any kind.

*U.S. v. Baker,* 197 F.3d 211, 216–17 (6th Cir. 1999).

That logic applies with equal force here. Richey does not argue that he was deprived of due process when he attained his legally relevant status—*i.e.*, when he was admitted to a hospital pursuant to MHL § 9.39—he argues that the government was required to inform him of the legal relevance of this status. But again, plaintiff has not identified evidence or authority to overcome the persuasive logic of these extra-circuit authorities, let alone the kind of controlling authority that would compel the opposite conclusion.

Richey's second argument—that he was entitled to notice of the procedures available to restore his rights—fares no better. *See Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) ("[C]ases from both the Supreme Court and [the Second Circuit] make clear that the federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law.") (emphasis in original).

In all, plaintiff has not identified any support for his contention that defendants were constitutionally required to inform him of his incidental classification as a "prohibited person" after he was admitted to Samaritan under MHL § 9.39.

**2.      Regardless, the Court's balancing of the *Mathews* factors demonstrated that the post-deprivation procedures available to plaintiff were constitutionally adequate.**

In any event, Richey has not identified a clear error of law in the Court's earlier decision. Richey argues that, without some form of additional post-deprivation notice, the *Mathews* factors are "basically meaningless." Pl.'s Mem. at 6.

"However, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)); *see also Black v. Decker*, 103 F.4th 133, 148 (2d Cir. 2024) ("*Mathews* 'remains a flexible test,' and takes account of individual circumstances.). As defendants note, "the Court carefully analyzed the allegations in the Amended Complaint and determined that Plaintiff failed to state a plausible . . . post-deprivation due process claim," and "[t]he Court further observed that extensive procedural protections were available to [p]laintiff." Defs.' Opp. at 6.

In sum, Richey's non-conclusory allegations do not plausibly state a post-deprivation due process claim, because, as the Court previously found, there were constitutionally sufficient post-deprivation procedures available to him, and he has not alleged any facts disputing the existence or availability of those procedures. *See Richey*, 2025 WL 1836492, at *9–*11.

**B.      The Court properly dismissed plaintiff's claims against the Panel Member defendants on quasi-judicial immunity grounds at the pre-answer motion to dismiss stage.**

Second, Richey argues that he is entitled to partial reconsideration because the Court prematurely and erroneously dismissed his claims against the Panel Member defendants on quasi-judicial immunity grounds. Pl.'s Mem. at 10. In response, defendants maintain that plaintiff has not demonstrated entitlement to reconsideration of the portion of the July 3 Order dismissing the Panel Member defendants. Defs.'Opp. at 7.

As an initial matter, Richey contends that the Court's pre-answer dismissal of the Panel Member defendants was premature. Pl.'s Mem. at 10. According to Richey, he "should be afforded the opportunity to depose the Panel Member [defendants] . . . to obtain a full and proper factual inquiry into their functions before they are dismissed . . . under the defense of quasi-judicial immunity." *Id*.

Although, as plaintiff points out, a defendant's entitlement to quasi-judicial immunity "depends on the nature of the function being performed by the defendant . . ., the nature of that function is often clear from the face of the complaint." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005). In such cases, the "immunity defense may be resolved as a matter of law on a motion to dismiss." *Id.*

For example, the Second Circuit recently affirmed a district court's pre-answer dismissal of claims against a firearms licensing officer on quasi-judicial immunity grounds. *Kellogg v. Nichols*, 2025 WL 2382894, at *3 (2d Cir. Aug. 18, 2025) (citing *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)).

In *Kellogg*, the Second Circuit reiterated its position that, "[f]irearms licensing officers render '[a]ctual rulings,' . . . that 'directly address the specific applications, refer to relevant requirements of § 400.00, and decide the merits of the applicants' requests.'" *Kellogg*, 2025 WL 2382894, at *3 (quoting *Libertarian Party of Erie Cnty.*, 970 F.3d at 124) (cleaned up).

Similarly, here, Richey's amended complaint alleged that the Panel Member defendants rendered a determination denying his application for a certificate of relief from disabilities upon review of the required documentation, "including [p]laintiff's complete medical records from

Samaritan in 2019." Am. Compl. ¶¶ 104–08.[1]  Accordingly, the Panel Member defendants' alleged conduct falls well within the scope of quasi-judicial immunity.

Second, plaintiff argues that the Court erred in not reaching the conclusion reached in *D.B. v. Sullivan*, 2025 WL 1033883, at *9 (N.D.N.Y. 2025), given the similarity of the facts alleged in that case.  Pl.'s Mem. at 9.  Though the Court cited *D.B. v. Sullivan* for the general proposition that courts may take judicial notice of rules and regulations in determining whether proceedings are quasi-judicial in nature, the Court is not otherwise bound by the outcome in that case.  *See Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

Nevertheless, plaintiff maintains that:

> Recent depositions in the matter of *D.B. v. Sullivan* . . . bear out that the panel members hold full-time jobs and perform their Certificate of Relief functions on a part-time basis; they review documents and then make a decision.  No witnesses are interviewed, no hearing is held, the Panel Members have no contact with the applicant nor do they communicate with any witnesses or character references, no rules of evidence or other procedural rules are applied.

Pl.'s Mem. at 10.  Still, none of these assertions compel a different conclusion than that reached in the July 3 Order.  Plaintiff cites no authority for the proposition that quasi-judicial immunity applies only to those who work full-time in a quasi-judicial capacity.  Moreover, the fact that a proceeding is conducted *ex parte* has no bearing on whether it is judicial in nature.  *See Libertarian Party of Erie Cnty.*, 970 F.3d at 123 ("Nor does a determination as to whether a

---

[1] Plaintiff attached the Panel Member defendants' written determination as an exhibit to his brief in opposition to defendants' 12(b)(6) motion, which shows that the Panel Member defendants made their determination by applying the standard set forth in 14 N.Y.C.R.R. § 543.5(b)(3) to the extensive documentary evidence plaintiff submitted.  *See* Dkt. No. 34.

proceeding is judicial in nature depend on the formality or informality with it was conducted, or on whether the proceeding was adversary or *ex parte*.").

In all, plaintiff has not demonstrated entitlement to reconsideration of the portion of the July 3 Order dismissing his claims against the Panel Member defendants on quasi-judicial immunity grounds.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's motion for reconsideration (Dkt. No. 54) is DENIED.

**IT IS SO ORDERED.**

Dated: October 29, 2025
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge