UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ISAAC RICHEY,

*Plaintiff*,

-against-

ANN MARIE T. SULLIVAN, MD,

*Defendant*.

**DECLARATION OF ALEXANDER SHAPIRO**

1:23-cv-344

(AJB/DJS)

Alexander Shapiro declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am employed as an Associate Attorney in the Counsel's Office of the New York State Office of Mental Health (OMH) and have been so employed since April 2023.

2. Since March of 2026, one of my duties in Counsel's Office involves providing legal advice and guidance on issues related to the National Instant Criminal Background Check System (NICS) Index (Federal NICS Database), including issues related to the Certificate of Relief Application Process which is statutorily available to individuals whose data was reported to the Federal NICS Database due to an involuntary committal at a hospital in the State of New York. I also respond to correspondence and telephone calls on behalf of the Office of NICS Appeals and New York Secure Ammunition and Firearms Enforcement Act of 2013 (SAFE Act), (OMH's NICS Office) and assist individuals in filing an application for a Certificate of Relief from Disabilities relating to firearms.

3. I make this affirmation in support of Ann Marie T. Sullivan's summary judgment motion based upon my personal knowledge, or upon information and belief where indicated,

based upon my review of records maintained by OMH's NICS Office in the regular course of business.

**A. Background on Mental Health Reporting under State and Federal Law**

4. The federal NICS Database is a federal program with specific, objective reporting criteria for federal, state, local and tribal agencies/sources that result in the addition of qualifying involuntary hospitalizations (or mental adjudications) to the federal NICS Database. These specific, objective reporting criteria are governed by federal and state statutes and regulations as detailed below. The Criminal Justice Information System (CJIS) Division of the Federal Bureau of Investigation (FBI) manages and maintains the federal NICS Database, which contains information provided by federal, state, local and tribal agencies/sources regarding persons prohibited under Federal law from receiving, owning or possessing a firearm. OMH does not control or maintain this database.

5. The federal Brady Handgun Violence Protection Act of 1993 (Brady Act) required the federal government to establish NICS to search the backgrounds of prospective gun purchasers for information which would disqualify them from possessing firearms. *See generally* 18 U.S.C. § 922. The data in NICS comes from federal, state, local and tribal sources.

6. Federal law provides that those who are "adjudicated as a mental defective" or who have "been committed to a mental institution," (NYS Law uses the term "admission" instead of "committed" which has the same exact meaning), are not permitted to possess or purchase firearms pursuant to 18 U.S.C. §§ 922(d)(4) and (g)(4).

7. The federal NICS Improvement Amendment Act of 2007 (NIAA) amended the Brady Act and provided incentives to the states to transmit to federal NICS Database records

concerning disqualifying events that would prevent handgun/firearm purchases by individuals who are prohibited from possessing such weapons under federal law.

8. Congress enacted the NIAA in part because of several events in which persons who should have been disqualified under federal law were able to obtain firearms later used to carry out terrible acts of violence, in particular the 2007 mass shooting at Virginia Tech and the 2002 murder of a Catholic priest celebrating mass in Lynbrook, New York. *See* 122 Stat. 2559.

9. In response to the NIAA, New York State Mental Hygiene Law (MHL) § 7.09 was amended in 2008. *See* L. 2008, ch. 491, § 1. These amendments required OMH (in cooperation with other New York State agencies) to transmit to the federal NICS Database identifying information of individuals who have been involuntarily committed to a hospital in New York State. It also required the cooperation of other state agencies. *See* 14 NYCRR 543.3.

10. Pursuant to 14 NYCRR 543.3,OMH began submitting data to the federal NICS database in 2009 for those individuals 18 years old and above, who were involuntarily committed/admitted (latter is NYS terminology) to a psychiatric hospital operated by OMH pursuant to Article 31 of the MHL (*i.e.*, MHL Article 31 Hospital).[1]

11. In 2013, pursuant to MHL § 7.09 and with the assistance of the New York State Department of Health (DOH), OMH began submitting data to the federal NICS database for those individuals 18 years old and above, who were involuntarily committed to a hospital

[1] An "MHL Article 31 Hospital" (i.e. OMH Hospital) refers to a facility which is licensed by OMH pursuant to Article 31 to operate a health care facility for the care, custody and treatment of individuals with mental illness. Submission of records from Article 31 hospitals to Federal NICS Database is required pursuant to MHL § 7.09(j)(1), MHL § 33.13(b) and MHL § 31.11(5).

operated pursuant to Public Health Law Article 28 (i.e., PHL Article 28 Hospital),[2] which includes Samaritan Medical Center in Watertown, New York.

12. OMH maintains its own database (OMH's NICS Database) of persons disqualified from receiving or possessing a firearm due to an involuntary hospital admission. The purpose of OMH's NICS Database is to receive involuntary commitment data from DOH and OMH and subsequently bundle that data into an automatic batch process which forwards the information to the federal NICS Database through a process facilitated by the New York State Office of Information Technology Services (NYS ITS).

13. The records of such admissions are typically submitted to the federal NICS database by each individual hospital through an automated process that does not require a determination or any action by OMH or DOH. More specifically, the DOH hospitals enter information about qualifying admissions to the Person-based Electronic Response Data System (PERDS) in DOH's secure Health Commerce System portal. That information is then immediately transmitted electronically to OMH's NICS Database where OMH electronically bundles that data into an automatic batch process which is forwarded to CJIS for inclusion in the federal NICS Database through a process facilitated by NYS ITS. This process is automatic and does not require a determination or any action by DOH.

14. OMH's NICS Database is only used by OMH to send electronic records of involuntary admissions to the federal NICS Database, and to process cancellation requests received from DOH and OMH.

---

[2] A "PHL Article 28 Hospital" is a private facility licensed by the New York State Department of Health pursuant to Article 28 of the Public Health Law to operate a health care facility when such facility contains a mental health unit. Submission of records from Article 28 hospitals (and other private facilities) to Federal NICS Database is required pursuant to MHL § 7.09(j)(1), MHL § 33.13(b) and MHL § 31.11(5).

15. The involuntary commitment data (contained in OMH's NICS Database) that is sent to the federal NICS Database is exclusively maintained by NYS ITS. OMH's NICS Database is only accessible using OMH's software called the NICS Administration Application, and only OMH's NICS Office can use that software.

16. Involuntary psychiatric admissions subject to this reporting requirement include hospitalizations under New York's procedures for emergency commitment, MHL §§ 9.37 and 9.39, as well as involuntary hospitalizations under New York's procedures for commitment outside the emergency context, *see* MHL §§ 9.27, 9.31.

17. MHL § 9.39 is a commitment statute because it authorizes the involuntary admission, to hospitals with qualifying mental-health services, of persons with acute mental-health symptoms that are likely to result in serious harm to themselves or others.

18. This statute further authorizes hospitalizations of up to 15 days. Parties are being hospitalized because they require stabilizing treatment to end the emergency. Sometimes, the therapeutic nature of the inpatient setting and the removal of external stress factors enable patients to stabilize quickly without the need for continued retention. It is thus not uncommon for patients to improve enough so that they can be released within days.

19. The transmittal of information regarding involuntary commitments remains incredibly important to protecting public safety.

20. The importance of NICS reporting in New York hospitals was recently underscored by the 2023 mass shootings in Lewiston, Maine.

21. The shooter in that incident had previously been involuntarily committed to a psychiatric facility in Westchester County, New York, pursuant to MHL § 9.39. Due to an error

by hospital personnel, his commitment was never communicated to OMH, and therefore never included in the NICS database.

22. Approximately four months after his involuntary commitment in New York, he committed two mass shootings – one at a bowling alley and another at a restaurant – killing 18 people and wounding 13 more.

23. Being released from a MHL § 9.39 commitment means that the patient has responded to treatment and is no longer an imminent threat of harm. It does not mean that his or her condition is cured, or that he or she will not become dangerous again in the future.

**B. New York's process for obtaining relief from NICS reporting.**

**i. OMH process for correcting inaccurate NICS reports.**

24. As a condition of certain grant funding, federal law requires the State to correct or remove a record from the NICS database when it becomes aware that there is no basis for a record. *See* 34 U.S.C. § 40912(c)(1)(B). State regulations also impose such a duty on OMH. *See* 14 NYCRR 543.6(a); *see also* 28 C.F.R. 25.10(f) (authorizing individual to bring action to contest accuracy of record).

25. OMH has set aside resources to respond to requests to correct reports to NICS. When made aware of a potential inaccuracy, OMH reviews each report to assure that the patient was accurately identified and the commitment accurately reported. If a report is inaccurate in either respect, OMH can correct it. If, however, OMH's NICS Office is made aware that there is potentially no basis for an Article 28 hospital's reporting of a NICS record, OMH will communicate to DOH and/or the Article 28 hospital that there is a potential factual error in reporting the NICS record and ask the Article 28 hospital to confirm whether the NICS record

was correctly reported. The Article 28 hospital is obligated to cancel the record if the Article 28 hospital confirms the factual error. OMH is unable to cancel a NICS record submitted by an Article 28 hospital because the sole discretionary authority in any decision to cancel the record is with the hospital who submitted the initial record.

26. But if the report accurately reflects that the individual was involuntarily hospitalized under a statute authorizing "commitment" within the meaning of the federal law, OMH takes no additional action until the individual files a certificate of relief application from disabilities relating to firearms with OMH's NICS Office. *See* 14 NYCRR part 543.

**ii. OMH process for issuing certificates of relief from disability.**

27. The federal NICS Improvement Amendments Act of 2007 required, as a condition of receiving federal grant money related to assisting states in providing relevant records to NICS, New York State to establish a process for individuals who have been adjudicated mentally defective or committed to a mental institution to apply for a certificate of relief from disabilities in order to permit those individuals to lawfully possess and purchase a firearm.

28. In 2009, pursuant to MHL § 7.09, New York State implemented a process for those who seek such a certificate of relief from disabilities. *See* 14 NYCRR part 543. The process matches the requirements laid out in 34 U.S.C. § 40915.

29. The United States Department of Justice certified in 2009 that the certificate of relief from disabilities process met all the requirements of the federal law.

30. Any "individual who has been, or may be, disqualified from attempting to purchase or otherwise possessing a firearm pursuant to 18 U.S.C § 922(d)(4) and (g)(4), due to being committed to a mental institution or adjudicated as having a mental disability, . . . and

whose records were submitted to the NICS system by [OMH] in accordance with Section 7.09 of the [MHL]," 14 NYCRR 543.3, "may request administrative review by [OMH] to have his or her civil rights restored for such limited purpose" *id.* 543.5(a)(1); *accord* 15 U.S.C. § 40915(a)(1).

31. The application and instructions for the certificate of relief from disabilities relating to firearms is available at https:\\nics.ny.gov. OMH's Office of NICS Appeals oversees the application and review process of these applications.

32. Upon receipt, a panel of individuals, including a forensic psychiatrist, a lawyer, and a senior consumer affairs advocate, provide an administrative review of the materials on behalf of the Commissioner to determine, from the information provided, "whether the applicant will not be likely to act in a manner dangerous to public safety and granting the relief will not be contrary to the public interest." 14 NYCRR 543.5(b)(1), (3). This standard of review was established by Congress. *See* 34 U.S.C. § 40915(a)(2).

33. Following that review, the panel prepares a written determination that includes, among other things, a decision as to whether the certificate of relief is granted. *See* 14 NYCRR 543.5(c)(1).

34. If an application for a certificate of relief is granted, OMH implements an update to the federal NICS database to indicate that the relief was granted. This removes the federal law disqualification from firearms purchase and possession under 18 U.S.C. § 922(d)(4) and (g)(4), as a grant of the certificate of relief means that the "commitment . . . is deemed not to have occurred." 34 U.S.C. § 40915(b).

35. If an application for a certificate is denied, the applicant is informed of his/her right to have the decision reviewed in state court, and, is advised that she/he may not apply again

until a year after the date of the written determination denying the certificate of relief. *See* 14 NYCRR 543.5(c)(2)(i)(A) and (B).

36. Individuals regularly apply for and obtain a certificate of relief enabling them to carry a firearm. Between 2019 and 2023 individuals filed 199 applications. OMH granted 113 (57%) of those applications.

37. An applicant whose certificate of relief is denied may challenge the denial in state court via a CPLR article 78 proceeding. *See* MHL § 7.09(j)(2). Unlike most article 78 proceedings in which administrative determinations are reviewed to determine whether they are arbitrary and capricious, all denials of a certificate of relief must be reviewed *de novo*. *Id*. This form of judicial relief is also required by Congress. *See* 34 U.S.C. § 40915(a)(3).

**C. Plaintiff's NICS Record**

38. Plaintiff was admitted to Samaritan Hospital on January 28, 2019 and the hospital submitted a record of Plaintiff's involuntary commitment to PERDS, which resulted in an entry in NICS. On information and belief, Samaritan would have sent records to the NICS database at or near the time that he was admitted.

39. That process is automatic and computerized; no OMH representative took any action regarding the Plaintiff.

40. On November 17, 2021, subsequent to submission of the information concerning the involuntary admission to the NICS database, Plaintiff applied to OMH for a certificate of relief from disabilities in accordance with MHL § 7.09 and 14 NYCRR Part 563. *See* Materials Submitted for NICS Panel consideration, Exhibit 1, pp. DEF000001-33. The application was then referred to the Office of NICS Appeals and requests were made for additional records and

documentation including, *inter alia*, Plaintiff's treatment records from Ft. Drum Behavior Health and notes from sessions with a psychologist, Robert Rogers, prior to August 2021. *See id.* at DEF0000038

41. After OMH's Office of NICS Appeals gathered the additional documentation from Plaintiff, OMH's Office of NICS Appeals confirmed all the requested documentation was provided and submitted them to the Panel for review. *See id.* at DEF000041. After considering whether Plaintiff met the criteria for a certificate of relief, on July 28, 2022, the Panel issued its determination that "the issuance of a certificate of relief from disabilities allowing [Plaintiff] to purchase a firearm would be contrary to the public interest," thereby denying the application for a certificate of relief from disabilities. *See id.* at DEF000034-35. Plaintiff was advised that he had "the right to have this decision reviewed in accordance with applicable State law." *Id*. at 35.

Dated: Albany, New York

August 31, 2026

Alexander Shapiro