UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ISAAC RICHEY,

Plaintiff,

-against-

ANN MARIE T. SULLIVAN, M.D.,
in her Official Capacity,

Defendant.
--------------------------------------------------------x

1:23-cv-00344-AJB-DJS

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

ISAAC RICHEY ("Plaintiff"), by and through The Bellantoni Law, Firm, PLLC, herein provides the following Statement of Undisputed Material Facts pursuant to Rule 56.1 of the Local Rules of Practice for the Northern District of New York.

1. Plaintiff is 26 years old, married, and a resident of Montana. *See,* portions of Plaintiff's deposition transcript at Declaration of Amy L. Bellantoni ("Bellantoni") Exhibit ("Ex.") 1 at 13, 15.

2. Plaintiff has never been arrested or charged with a crime. Ex. 1 at 55; *see,* Fingerprint-based Criminal history background reports of New York State and Federal Bureau of Investigation at Bellantoni Ex. 2.

3. Other than the instant disqualification, Plaintiff has never had a firearm "taken away" from him. Ex. 1 at 18-19.

4. Plaintiff is employed as a security officer for the Montana Department of Commerce. Ex. 1 at 16.

5. Plaintiff holds an Associate Degree in Information Systems Cybersecurity. Ex. 1 at 16.

6. Plaintiff grew up in Eugene, Oregon where he lived with his grandparents. Ex. 1 at 18, 29.

7. Plaintiff was first introduced to firearms when he was young, in the nature of clay pigeon shooting. Ex. 1 at 16.

8. Plaintiff graduated from high school in and around 2017, after which he enlisted in the United States Army. Ex. 1 at 24-25.

9. Prior to his enlistment, Plaintiff purchased and owned an AR-15 in Oregon for recreational shooting. Ex. 1 at 17-19.

10. Plaintiff was assigned to the Infantry. Ex. 1 at 25-26.

11. Plaintiff attended bootcamp at Fort Benning, GA. Ex. 1 at 25-26.

12. Plaintiff was stationed at Ft. Drum, New York. Ex. 1 at 27.

13. Plaintiff regularly used firearms as an infantryman. Ex. 1 at 25-26.

14. Plaintiff received firearms training in the military including basic rifleman skills. Ex. 1 at 26.

15. Plaintiff was assigned to the A.T. Four Ricket Launcher; he received training on how to shoot and maintain that weapon system, as well as shotgun breaching courses. Ex. 1 at 26-27.

16. Plaintiff was heavily hazed and bullied during his first year at Ft. Drum. Ex. 1 at 27.

17. In and around January 2019, Plaintiff's grandmother was experiencing kidney failure, which led to her passing. Ex. 1 at 29.

18. Growing up, Plaintiff's grandmother was, in all important aspects, his mother. Ex. 1 at 29.

19. Plaintiff's girlfriend broke up with him on January 27, 2019. *See* a true and accurate copy of Plaintiff's application packet and communications with the Office of NICS Appeals. Ex. 4 at Def. 0219.

20. Plaintiff was very sad about his grandmother's impending death from kidney failure, his hazing and bullying at Ft. Drum, and the death of his childhood best friend immediately prior to Plaintiff's enlistment. Ex. 4 at Def. 0216-219; 305.

21. Plaintiff and his best friend had gone target shooting "as they often did"; his friend walked off to use the restroom and committed suicide by shooting himself in the head. Ex. 4 at Def. 0216, 0305.

22. On January 28, 2019, Plaintiff was speaking with his team leader about his feelings of sadness when the military police appeared to perform a wellness check; they asked Plaintiff if he had "any interest in going to Samaritan Hospital." Ex. 1 at 29.

23. Plaintiff did not realize there were mental health units at the hospital, as he had not experienced anything like that before. Ex. 1 at 29.

24. Plaintiff thought that it would be a "good place to reset" and saw it as an opportunity to get away from the people that were hazing and bullying him. Ex. 1 at 29-30.

25. The military police brought Plaintiff to Samaritan. *See,* Form OMH 474 at Bellantoni Ex. 3.

26. Plaintiff was admitted to Samaritan pursuant to Mental Hygiene Law (MHL) § 9.39. Ex. 3; Ex. 4 at Def. 0305-307.

27. The MHL 9.39 form was signed by an "admitting physician" who found that there was "reasonable cause" to retain Plaintiff for "immediate observation, care and treatment." Ex. 3.

28. The Notice of Status and Rights for Plaintiff's MHL 9.39 admission informed that he had "been admitted as an emergency-status patient …because you are alleged to have mental illness for which immediate observation, care, and treatment in a hospital is appropriate…[and that' such mental illness is likely to result in serious harm…" Ex. 3.

29. The Notice of Status Rights further provides, "During this 15 day period you may be released, ***converted*** **to involuntary status**, or asked to remain as a voluntary or informal patient. Ex. 3 (emphasis added).

30. The State concedes that people admitted to a hospital pursuant to MHL § 9.39 are reported to NICS. *See,* Answer to First Amended Complaint at ¶ 58 [DE 55].

31. New York State considers MHL § 9.39 admissions to be "involuntary commitments." *See,* Ex. 5 at 2, ¶ 4 (characterizing Plaintiff' Samaritan admission as an "involuntary commitment").

**Plaintiff's Return to the Infantry at Ft. Drum**

32. Plaintiff was discharged from Samaritan without being "*converted* to involuntary status." any conversion to MHL § 9.27 or § 9.37. Ex. 4 at Def. 0310.

33. Plaintiff was discharged from Samaritan without any conversion to MHL § 9.27 or § 9.37. Ex. 4 at Def. 0310.

34. Plaintiff periodically attended therapy sessions at the Ft. Drum Behavioral Unit. Ex. 1 at 38-39; Ex. 4 at Def. 000045; Ex. 5.

34. Plaintiff returned to his assignment in the infantry at Ft. Drum. Ex. 1 at 39-40, 69-71.

35. Plaintiff had access to firearms, munitions and explosives upon his return to Ft. Drum. Ex. 1 at 69-70.

36. Plaintiff was, "twenty-four seven," in the company of the same individuals who bullied him Ex. 1 at 70.

37. At no time during that period of time when Plaintiff was armed and around the people that were hazing and bullying you, did he use or threaten the use or misuse of firearms and munitions against them. Ex 1 at 70.

38. Plaintiff was assigned to the armory after his discharge from Samaritan; he wanted to become an armorer. Ex. 1 at 71.

39. After his field training exercises, Plaintiff would help the armorer clean the M-4s, handguns, rocket launchers, grenade launchers, SAW gunners, automatic machine guns, and explosives. Ex. 1 at 71.

40. Plaintiff was never disciplined for misuse of firearms in the military. Ex. 1 at 71.

41. When Plaintiff returned to Ft. Drum, the people who had been bullying and hazing Plaintiff stopped treating him negatively; when the hazing stopped, his mental health improved. Ex. 1 at 40.

42. Plaintiff did not have any further thoughts of self-harm. Ex. 1 at 39.

43. The Ft. Drum Behavioral Health records concluded, "[Plaintiff] has no psychiatric disease or defect…is mentally sound and able to appreciate any wrongfulness in conduct and to conform conduct to the requirements of the law…is considered accountable for behavior and subject to normal channels of counseling and discipline…" Ex. 4 at Def.0098.

44. Ft. Drum cleared Plaintiff for deployment. Ex. 4 at Def. 0098.

45. Every new person who joins Ft. Drum is hazed and bullied. Ex. 1 at 71-72.

46. Plaintiff observed another private bullied because he was overweight. Ex. 1 at 71-72.

47. When that private sought advice from Plaintiff, Plaintiff informed him that the bullying and hazing only stopped when Plaintiff returned from Samaritan. Ex. 1 at 71-72.

48. That private hanged himself the next day. Ex. 1 at 71-72.

49. Plaintiff received an Honorable Discharge in 2020. Ex. 1 at 40.

50. The only disability that Plaintiff currently experiences from his time in the service is related to shoulder and lower back injuries. Ex. 1 at 41.

51. Other than his admission to Samaritan, Plaintiff has never been admitted to a hospital for any mental health-related issue or event. Ex. 1 at 72-73.

52. Plaintiff has regularly attended talk therapy throughout his life, from before the military and afterward, considering it as "maintenance" and to have a professional to talk and vent to, rather than using a "wife or friends." Ex. 1 at 58-62.

53. Plaintiff began therapy with Dr. Rogers in Eugene, Oregon upon his Honorable Discharge from the military. Ex. 1 at 41.

54. When he sought Dr. Rogers, Plaintiff "wasn't depressed or sad or anything" he found this "talk therapy" "helpful." Ex. 1 at 59.

55. Plaintiff moved to Texas and stopped seeing Dr. Rogers. Ex. 1 at 60.

56. Plaintiff eventually began seeing Dr. John Shackelford in 2022 while he was living in Texas. Ex. 1 at 22, 43, 60-62.

57. Plaintiff moved to Montana approximately 2 years ago. Ex. 1 at 62.

58. Plaintiff does not currently treat with any mental health professionals. Ex. 1 at 43.

**NICS Denial and Certificate of Relief Application**

59. After Plaintiff was discharged from the military, he attempted to purchase a shotgun for bird hunting and self-defense. Ex. 1 at 43-44.

60. Plaintiff failed the federal and state background check. Ex. 1 at 44.

61. Plaintiff did not know the reason for the denial, but upon inquiry to the Oregon State Police, he learned that the 'flag' originated in New York. Ex. 1 at 45-47.

62. Plaintiff contacted the New York State Office of Mental Health by phone and email; weeks later he was informed that he was required to complete the Certificate of Relief process. Ex. 1 at 47.

63. Plaintiff gathered all of the documents required by the Office of NICS Appeals and submitted his application packet for a Certificate of Relief. Ex. 1 at 47-48; Ex. 4.

64. The Office of NICS Appeals (ONA) denied Plaintiff's application. Ex. 1 at 48; *see* July 28, 2022 denial letter at Ex. 5; Defendants Answer [DE 55] at ¶ 108.

65. The Office of NICS Appeals did not request that Plaintiff be evaluated by a state-selected psychiatrist during the certificate of relief process. Ex. 1 at 49-50.

66. No one from ONA, or on their behalf, conducted any evaluation or assessment of Plaintiff to determine his present-day mental state or character. Ex. 1 at 49-50.

67. The ONA denial rested on stale pre-application material and a records-only "investigation" with no present-day dangerousness assessment. Ex. 5.

68. The six (6) substantive character reference letters from people who personally know Plaintiff, including his girlfriend at the time (now wife), two friends who have known him since high school, and military peers submitted to the ONA did, in fact, demonstrate his present-day character, stability, and absence of dangerousness. Ex. 4 at Def. 0012-0025.

69. Plaintiff has no concern that the circumstances from January 2019 would repeat themselves; those events were situational and do not exist anymore. Ex. 1 at 52-54.

70. Plaintiff is not presently under the care of any mental health professional. Ex. 1 at 43.

71. Plaintiff is not taking any medication to treat any psychiatric condition. Ex. 1 at 56.

72. Plaintiff seeks to possess firearms once again; specifically, for hunting and self-defense. Ex. 1 at 44, 52-53.

73. Plaintiff resides in Montana and hikes often; his first purchase would be a firearm to defend against grizzly bears. Ex. 1 at 53.

74. The events that led to Plaintiff's admission to Samaritan were circumstance-related; he has no concern that any such 'episode' would recur because the circumstances to not exist anymore. Ex. 1 at 53.

75. Plaintiff is prohibited from possessing firearms because the MHL § 9.39 admission to Samaritan was reported to NICS. Ex. 5.

76. Plaintiff does not currently have possession of the AR-15 he purchased prior to is enlistment. Ex. 1 at 18.

77. In 2022, Dr. John Shackelford conducted a forensic psychological evaluation of Plaintiff. Ex. 6.

78. In Dr. Shackelford's clinical opinion, Plaintiff is "stable mentally and completely safe to buy and own firearms." Ex. 6.

79. Dr. Shackelford also observed, "There is no indication of excessive anger or tendencies to act out violence against himself or others." Ex. 6 at 2.

Dated: August 31, 2026
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

Amy L. Bellantoni

Amy L. Bellantoni, Esq.
Bar No. 701018
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com